PER CURIAM.
In this case, we consider whether an employee who claims the benefit of sovereign immunity pursuant to section 768.28(9)(a), Florida Statutes (2005), which entitles that employee not to be held “personally liable in tort or named as a party defendant” for acts within the scope of her or his employment, may obtain interlocutory review of an adverse trial court ruling where the question turns on an issue of law. In Keck v. Eminisor, 46 So.3d 1065 (Fla. 1st DCA 2010), the First District Court of Appeal declined to exercise cer-tiorari review over a trial court’s order denying summary judgment based on such a claim of individual immunity pursuant to section 768.28(9)(a). The First District certified the following question as one of great public importance:
Whether review of the denial of a motion for summary judgment, based on a claim of individual immunity under section 768.28(9)(a) without implicating the discretionary functions of public officials, should await the entry of a final judgment in the trial court?
Id. at 1068. We have jurisdiction. See art. V, § 3(b)(4), Fla. Const. We rephrase the certified question as follows:
Should review of the denial of a motion for summary judgment based on a claim of individual immunity under section *361 768.28(9)(a), Florida Statutes, await the entry of a final judgment in the trial court to the extent that the order turns on an issue of law?
For the reasons set forth below, we answer the rephrased question in the negative and quash the First District’s decision. Because section 768.28(9)(a) specifies that an employee of the State shall not be “named as a party defendant” in a lawsuit unless the employee acted in bad faith, with malicious purpose, or in a manner exhibiting wanton and willful disregard, we conclude that Keck should be entitled to interlocutory review in this case, as the resolution of that issue turns on a question of law. In accordance with our approach to the issue of individual immunity in Tucker v. Resha, 648 So.2d 1187, 1189-90 (Fla.1994), we conclude that a claim of individual immunity from suit under section 768.28(9)(a) should be appealable as a non-final order under Florida Rule of Appellate Procedure 9.130, obviating the necessity of determining whether common law certiorari would alternatively be available. We also consider Keck’s underlying claim of immunity and hold that Keck is entitled to the individual immunity provided in section 768.28(9)(a).
BACKGROUND
This case arises from a negligence action filed by Ashleigh Eminisor against Andre-as Keck, the Jacksonville Transit Authority (JTA), and the Jax Transit Management Corporation (JTM). Specifically, in her complaint, Eminisor alleged that JTA owned a trolley used in mass transit that was operated by Andreas Keck with JTA’s consent and that on August 4, 2005, Keck “negligently operated Defendant JTA’s motor vehicle so that [it] collided with Plaintiff ASHLEIGH K. EMINISOR, who was a pedestrian crossing the street.” Eminisor sought recovery from Keck, JTM, and JTA for the injuries she sustained from this accident. Each defendant asserted immunity under section 768.28, Florida Statutes (2005). At issue in this case is Keck’s claim of individual immunity pursuant to section 768.28(9)(a), which he asserts provides immunity not only from liability for the actions alleged by Emini-sor, but also from being named as a defendant in the suit. Keck argues that his immunity derives from his status as an employee of JTM — a corporation acting primarily as an instrumentality of JTA— and, alternatively, as an agent of JTA.
Keck is employed by JTM, a corporation formed for the purpose of acting as an employer for unionized JTA workers. For the first several years of JTA’s existence, the daily operation of Jacksonville’s mass transit system continued to be controlled by Jacksonville Coach Company (Coach Company), the private corporation that had run the transit system prior to the formation of JTA. Although JTA had assumed responsibility for running the transit system, the Coach Company continued to control the system’s day-to-day operations. Seeking to exercise greater control over the day-to-day operations of the transit system in the early- to mid-1980s, JTA created a separate corporate entity through which it could employ the Coach Company’s unionized workers — primarily bus drivers and maintenance staff — while allowing them to maintain their private pension plan and right to strike. This corporate entity evolved into JTM, which was incorporated in the early 1990s and entered into a management contract with JTA in August 1992.
Although JTM is a private corporation, it is wholly controlled by and intertwined with JTA. JTM’s sole function is to provide bus drivers and maintenance workers for JTA. JTM bus drivers wear JTA uniforms, carry JTA identification cards, drive routes established by JTA in buses *362 provided by JTA, and are directly supervised by JTA employees. JTA provides all of JTM’s facilities and pays all of JTM’s costs of operations. JTA is the sole shareholder of JTM stock, and JTM does not own any assets. JTM maintains a zero-balance payroll account into which JTA deposits funds to meet JTM’s payroll demands each week. JTM’s Board of Directors — the Chairman of which is also the Executive Director of JTA — is composed primarily of managerial level JTA employees. Thus, although Keck is an employee of JTM, he works for, is supervised by, and is ultimately paid by JTA.
Based on these facts, Keck moved for summary judgment in the trial court, claiming immunity from both suit and liability pursuant to section 768.28(9)(a). The trial court denied Keck’s motion, finding that JTM was neither a “state agency or subdivision” under section 768.28(2), Florida Statutes (2005), nor an agent of the State under section 768.28(9)(a), and that Keck was therefore not entitled to immunity as an employee of JTM or as an agent of the State. Eminisor v. Jax Transit Mgmt. Corp., No. 16-2006-CA-008519 at 2 (Fla. 4th Cir. Ct. order filed Dec. 4, 2009) (Trial Court Order). The trial court reasoned that its findings were supported by the fact that JTM was formed “for the express purpose of creating a private employer for the bus drivers and mechanics in Jacksonville’s bus system,” rendering it “inconsistent for ... Keck to use JTM’s private status in labor relations matters while claiming that JTM is a state agency for sovereign immunity purposes.” Id. at 3. The trial court also concluded that at the time JTA formed JTM, it lacked the statutory authority to do so, since it was not until 2009 that power was given to JTA to form “public benefit corporations.” Id.
Keck sought review of the trial court’s denial of his motion for summary judgment. Keck, 46 So.3d at 1065. Because our rules of appellate procedure do not provide for interlocutory appeal of a trial court’s order denying summary judgment based on a claim of immunity under section 768.28(9)(a),[1] Keck petitioned the First District for a writ of certiorari. In declining to exercise certiorari review over the trial court’s order, the First District distinguished this case from those where Florida appellate courts have granted certiorari review of the denial of qualified immunity claims in which public officials asserted immunity from suit based on federal civil rights claims. Id. at 1066-67 (citing Tucker v. Resha, 648 So.2d 1187 (Fla.1994); Stephens v. Geoghegan, 702 So.2d 517 (Fla. 2d DCA 1997)). The First District concluded that “[bjecause this case involves only ordinary negligence and does not implicate other policy concerns or the discretionary functions of public officials,” certio-rari review was not appropriate. Id. at 1067. Because the First District held that certiorari review was not proper, it did not address the substantive issue of whether Keck is entitled to immunity pursuant to section 768.28(9)(a).
In the analysis that follows, we first explain why we find it necessary to rephrase the certified question. We then discuss why we answer the rephrased question in the negative. Finally, we address Keck’s claim of immunity under sec *363 tion 768.28(9)(a) and explain why Keck was entitled to summary judgment based on his claim of immunity.
ANALYSIS
The question before this Court is whether an appellate court can review a non-final order where the trial court denied an employee’s motion for summary judgment based on a claim of immunity under section 768.28(9)(a). As this presents a pure question of law, we apply a de novo standard of review. Aills v. Boemi, 29 So.3d 1105, 1108 (Fla.2010); Auto-Owners Ins. Co. v. Pozzi Window Co., 984 So.2d 1241, 1246 (Fla.2008).
The certified question, as stated by the First District, focuses on whether an appellate court should await the entry of a final judgment when reviewing the denial of a motion for summary judgment as to those claims of individual immunity made pursuant to section 768.28(9)(a) that do not implicate “the discretionary functions of public officials.” Keck, 46 So.3d at 1068 (emphasis added). Section 768.28(9)(a), however, makes no distinction between public officials whose jobs include discretionary functions and those public employees — like Keck — whose jobs include no such tasks. Specifically, section 768.28(9)(a), Florida Statutes (2005), provides in relevant part:
No officer, employee, or agent of the state or of any of its subdivisions shall be held personally liable in tort or named as a party defendant in any action for any injury or damage suffered as a result of any act, event, or omission of action in the scope of her or his employment or function, unless such officer, employee, or agent acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.... The exclusive remedy for injury or damage suffered as a result of an act, event, or omission of an officer, employee, or agent of the state or any of its subdivisions or constitutional officers shall be by action against the governmental entity, or the head of such entity in her or his official capacity, or the constitutional officer of which the officer, employee, or agent is an employee, unless such act or omission was committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.
(Emphasis supplied.) Upon review of this statute, it is clear that the immunity provided in section 768.28(9)(a) applies equally to every “officer, employee, or agent of the state or any of its subdivisions” for “any act, event, or omission of action in the scope of her or his employment or function” absent “bad faith ... malicious purpose or ... wanton and willful disregard of human rights, safety, or property.” Accordingly, we rephrase the certified question to address all claims of individual immunity provided by section 768.28(9)(a).
In addition, the certified question does not distinguish between whether the order turns on an issue of law or an issue of fact. However, summary judgment is inappropriate where there are disputed issues of material fact; therefore, we narrow the certified question to reflect this distinction. Accordingly, we rephrase the certified question in the following manner:
Should review of the denial of a motion for summary judgment based on a claim of individual immunity under section 768.28(9)(a), Florida Statutes, await the entry of a final judgment in the trial court to the extent that the order turns on an issue of law?

I. Resolving the Rephrased Certified Question

Generally, an appellate court may not review interlocutory orders unless *364 the order falls within the ambit of non-final orders appealable to a district court as set forth in Florida Rule of Appellate Procedure 9.130. In addition, under very narrow circumstances, a party may petition for certiorari to seek review of a non-final order not otherwise appealable when the petitioner can establish three necessary elements: (1) the order “depart[s] from the essential requirements of the law,” and (2) “result[s] 'in material injury for the remainder of the case (3) that cannot be corrected on postjudgment appeal.” Williams v. Oken, 62 So.3d 1129, 1132 (Fla.2011) (quoting Reeves v. Fleetwood Homes of Fla., Inc., 889 So.2d 812, 822 (Fla.2004)).
Here, the First District held that interlocutory review by certiorari was unavailable and that the case does not implicate the policy concerns or discretionary functions of public officials as was relied upon in this Court’s previous decisions where this Court undertook immediate review. Keck, 46 So.3d at 1066-67. However, the court certified the above question as one of great public importance “in light of the characterization of section 768.28(9)(a) as providing immunity from suit as well as from liability.” Id at 1067-68.
In Tucker, 648 So.2d at 1187-88, after a federal civil rights action was filed in state court, Tucker filed a motion for summary judgment asserting that she was entitled to qualified immunity based on her status as a public official. The trial court denied the motion, and Tucker petitioned the district court for a writ of certiorari, relying primarily “on the established federal appellate mechanism for interlocutory review of orders denying summary judgment on the issue of qualified immunity.” Id. at 1188. The First District determined that there was “no analogous Florida appellate procedural rule which would permit Tucker to appeal the non-final order denying summary judgment.” Id. Because no such avenue of review was available to Tucker, the court evaluated whether Tucker could seek review on the non-final order through a petition for writ of certiorari. See id. The district court denied Tucker’s petition, concluding that although “Tucker’s claim of qualified immunity from suit involve[d] a type of protection that cannot be adequately restored once lost by exposure to trial, ... the order did not depart from the essential requirements of law because genuine factual issues exist[ed] as to both counts.” Id. (citation omitted). The district court certified to this Court the question of whether a public official raising qualified immunity in a federal civil rights claim that was filed in state court was entitled to the same standard of review of denial of her motion for summary judgment as is provided in federal courts. Id. at 1187.
In considering the certified question, we examined whether to expand the category of non-final appealable orders to include orders denying summary judgment based on a qualified immunity claim. Id. at 1189-90. We analyzed “the nature of the rights involved,” concluding that immunity from suit involved in qualified immunity required that interlocutory review be available to an individual whose claim of qualified immunity was denied by the trial court. Id. Because qualified immunity of public officials involves “immunity from suit rather than a mere defense to liability,” we reasoned that immunity from suit “is effectively lost if a case is erroneously permitted to go to trial” because a trial court’s order denying qualified immunity cannot be reviewed “on appeal from a final judgment as the public official cannot be ‘re-immunized’ if erroneously required to stand trial or face the other burdens of litigation.” Id. at 1189 (quoting Mitchell v. Forsyth, 472 U.S. 511, 526-27, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985) (citation omit *365 ted)). We stressed that “if orders denying summary judgment based upon claims of qualified immunity are not subject to interlocutory review, the qualified immunity of public officials is illusory and the very policy that animates the decision to afford such immunity is thwarted.” Id. at 1190. We held that an order denying summary judgment based upon a claim of qualified immunity should be subject to interlocutory review to the extent that the order turns on an issue of law. Id. However, we did not reach this result by expanding the scope of certiorari review, but instead requested the Florida Bar Appellate Court Rules Committee to submit a proposed amendment that addressed such a rule change. See id.
In Department of Education v. Roe, 679 So.2d 756 (Fla.1996), we distinguished Tucker and determined that policy reasons weighed against expanding the category of non-final orders to claims of governmental entities raising claims of immunity:
[I]t cannot be said that suits against governmental entities grounded upon the statutory waiver of sovereign immunity constitute a small class of cases. To the contrary, permitting interlocutory appeals in such cases would add substantially to the caseloads of the district courts of appeal. Moreover, in light of the statutory waiver, it can no longer be said that the issue of sovereign immunity is always independent of the cause itself. Oftentimes, the applicability of the sovereign immunity waiver is inextricably tied to the underlying facts, requiring a trial on the merits. Thus, many interlocutory decisions would be inconclusive and in our view a waste of judicial resources. None of these concerns were evident in Tucker. Tucker is further distinguishable from cases involving sovereign immunity because qualified immunity is rooted in the need to protect public officials from undue interference, whereas sovereign immunity is not. Finally, in Tucker we had an interest in affording federal causes of action brought in state court the same treatment they would receive if brought in federal court. In contrast, this case involves no similar consideration; we are dealing here with a state law defense to an ordinary state law cause of action.
Id. at 758-59.
Turning to this case, when considering whether there are compelling reasons to amend rule 9.130 for claims of individual immunity such as in this case, we look to numerous policy considerations, including the nature of the rights involved, the likelihood that this issue will reoccur in the future, whether the issue of law can be resolved without resolution of factual issues, and the amount of increased workload that expanding rule 9.130 would have on appellate courts throughout the state. We also examine our prior precedent where we made such policy decisions.
We conclude that the policy considerations for allowing review by non-final order in this ease are more like those raised in Tucker and less like those in Roe. As in Tucker, and unlike Roe, this case involves an individual rather than a governmental entity.[2] We recognize that in Tucker the *366 individual was a public official, while this case involves a public employee. However, as the dissent noted in the decision below, although the social costs of the erroneous denial of immunity to governmental employees “may be different in degree between public officials and rank-and-file governmental employees, they are not different in kind.” Keck, 46 So.3d at 1072 (Wetherell, J., dissenting).
The complaint alleges that Keck committed ordinary negligence, and thus, pursuant to section 768.28(9)(a), he cannot be liable or even be named as a party defendant in the action; instead, the plaintiff must sue the governmental entity for which the employee works. In other words, while the State has waived its sovereign immunity for certain causes of action in section 768.28, it has not waived the immunity that it has provided to its officers, employees, and agents. If a State officer, employee, or agent acts within the scope of employment and does not act in bad faith, with malicious purpose, or in a manner exhibiting wanton and willful disregard, the plaintiffs exclusive recourse is to seek damages from the governmental entity or the head of such entity in his or her official capacity. Conversely, if the employee’s act falls outside of this area (i.e., the act was outside the scope of employment or committed in bad faith, with malicious purpose, or in a manner exhibiting wanton and willful disregard), the plaintiff can recover only from the employee, not from the State.
Thus, if a defendant who is entitled to the immunity 'granted in section 768.28(9)(a) is erroneously named as a party defendant and is required to stand trial, that individual has effectively lost the right bestowed by statute to be protected from even being named as a defendant. If orders denying summary judgment based on claims of individual immunity from being named as a defendant under section 768.28(9)(a) are not subject to interlocutory review, that statutory protection becomes essentially meaningless for the individual defendant.
For the above reasons, we answer the rephrased question in the negative and hold that an order denying summary judgment based on a claim of individual immunity under section 768.28(9)(a) is subject to interlocutory review where the issue turns on a question of law. As in Tucker, we do not utilize the common law writ of certio-rari for review of a claim of individual immunity. Because this holding will require a change to the Florida Rules of Appellate Procedure, we request that the Florida Bar Appellate Court Rules Committee submit a proposed narrow amendment to rule 9.130 addressing the rule change mandated by this decision.

II. Determining Whether Keck Is Entitled To Immunity

Because of its ruling that Keck had no right of interlocutory review, the First District did not address whether Keck is entitled to the immunity granted in section 768.28(9)(a). As we have determined that Keck is entitled to interlocutory review of an issue that turns on a question of law and because both parties have urged that we resolve the legal question, we now turn to the merits of Keck’s motion for summary judgment. We note again that we review a pure question of law de novo. Clay Elec. Coop., Inc. v. Johnson, 873 So.2d 1182, 1185 (Fla.2003) (“A trial court’s ruling on a motion for summary judgment posing a pure question of law is subject to de novo review.”). Based on the undisput *367 ed material facts, we hold that Keck is entitled to immunity under section 768.28(9)(a) by virtue of his employment with JTM,[3] a corporation acting primarily as an instrumentality of JTA, an agency of the State.
Our first step in analyzing this claim is to review the language of section 768.28(2), which defines the state agencies or subdivisions entitled to sovereign immunity as follows:
As used in this act, “state agencies or subdivisions” include the executive departments, the Legislature, the judicial branch (including public defenders), and the independent establishments of the state, including state university boards of trustees; counties and municipalities; and corporations primarily acting as in-strumentalities or agencies of the state, counties, or municipalities, including the Florida Space Authority.
§ 768.28(2), Fla. Stat. (2005). In defining “state agencies or subdivisions,” section 768.28(2) sets forth three distinct categories: (1) those entities that comprise the State itself — “the executive departments, the Legislature, the judicial branch (including public defenders), and the independent establishments of the state, including state university boards of trustees”; (2) political subdivisions of the State — counties and municipalities; and (3) corporations acting primarily as instrumentalities of the State or those political subdivisions, including the Florida Space Authority.
Under this structure, all parties agree that JTA falls within the definition of a state agency. In fact, section 349.03(1), Florida Statutes, expressly designates JTA as “a body politic and corporate and an agency of the state.” § 349.03(1), Fla. Stat. (2005). The question, however, is whether JTM fits under the third category, which expressly includes “corporations primarily acting as instrumentalities ... of the state.” § 768.28(2), Fla. Stat. (2005). Keck argues that JTM is included because it is a corporation primarily acting as an instrumentality of JTA, a state agency. However, the trial court ruled that while JTA is an independent establishment of the State and thus is entitled to sovereign immunity, the same cannot be said as to JTM because the statutory definition in section 768.28(2) does not expressly include corporations that are acting primarily as instrumentalities or agencies of independent establishments of the State. Eminisor asserts that the trial court’s construction of the statute was correct. We disagree.
In looking to the third clause of section 768.28(2), which provides for “corporations primarily acting as instrumentalities or agencies of the state,” section 768.28(2) does not repeat what constitutes “the state.” In order to ascertain the meaning of “the state” in this portion of section 768.28(2), the three separate clauses must “be construed as a whole in order to ascertain the general purpose and meaning of each part; each subsection, sentence, and clause must be read in light of the others to form a congruous whole.” Bush v. Holmes, 919 So.2d 392, 407 (Fla.2006) (quoting Dep’t of Envtl. Prot. v. Millender, 666 So.2d 882, 886 (Fla.1996)). It is apparent that reference to “the state” in the third clause must refer to those entities listed in the first clause of that section: “the executive departments, the Legislature, the judicial branch (including public defenders), and the independent establishments of the state, including state university boards of trustees.” Thus, as JTA is *368 an independent establishment of the State, for purposes of determining the meaning of “the state” within the third clause, JTA is a part of “the state.”
With this in mind, we now look to whether that immunity granted to JTA extends to JTM. It cannot reasonably be argued that corporations primarily acting as instrumentalities of the executive, legislative, or judicial branches are not acting as instrumentalities of the State. Likewise, corporations primarily acting as in-strumentalities of independent establishments of the State are included in the definition within section 768.28(2) of “state agencies or subdivisions,” because such entities are “corporations primarily acting as instrumentalities ... of the state.” A corporation that acts primarily as an instrumentality of an agency or independent establishment of the State is perforce an instrumentality of the State. The State acts through its agencies and independent establishments, and a corporate instrumentality of an agency or independent establishment is an instrumentality of the State. Thus, because JTM primarily acts as an instrumentality of JTA, it is among those “corporations primarily acting as in-strumentalities ... of the state” for purposes of section 768.28(2). Accordingly, we reject the assertion of the trial court and Eminisor that section 768.28(2) does not extend the status of “state agenc[y] or subdivision! ]” to those corporations acting as instrumentalities of independent establishments of the State.
Nor are we persuaded by the trial court’s conclusion that “[i]t is inconsistent for JTM and Keck to use JTM’s private status in labor relations matters while claiming that JTM is a state agency for sovereign immunity purposes.” Trial Court Order at 3. As aptly stated in Judge Wetherell’s dissent below, “[t]he criteria for determining whether an entity is a public employer for labor relations purposes are different than those used to determine whether a private entity is primarily acting on behalf of a public agency for purposes of sovereign immunity.” Keck, 46 So.3d at 1076 (Wetherell, J., dissenting). The requirements for being considered a public employer for labor relations purposes are distinct from those contained in section 768.28(2) and have no bearing on an entity’s status for purposes of sovereign immunity.
We also disagree with the trial court’s conclusion that JTM is not a state agency for sovereign immunity purposes because there was no statutory authority for its formation:
At the time when JTM was formed by the JTA, Chapter 349, Fla. Stat. did not authorize JTA to form corporations. That power was not given to the JTA until a 2009 amendment to § 349.04, Fla. Stat. gave it the power to form “public benefit corporations.” This amendment is described in the Staff Analysis of the 2009 amendment, which states that the bill “changes” JTA’s powers, and “authorizes” the JTA to form corporations.
Trial Court Order at 3. First, we disagree with this reasoning because the legal circumstances attending the formation of JTM by JTA do not alter the fact — which is conceded by Eminisor — that JTM is an instrumentality of JTA.
Second, although the JTA statute was not amended until 2009 to include the specific authority to form public benefit corporations, the statute contained several provisions prior to that time pursuant to which JTM could have legitimately been created. See § 349.04(l)(e), Fla. Stat. (2005) (providing that JTA “shall have the power and responsibility to formulate and implement a plan for a mass transit system which will serve the consolidated City of Jacksonville”); § 349.04(2), Fla. Stat. *369 (2005) (granting JTA “all powers necessary, appurtenant, convenient, or incidental to the carrying out of’ the purposes of the act); § 349.04(2)(Z), Fla. Stat. (2005) (granting JTA the power “[t]o do all acts and things necessary or convenient for the conduct of its business and the general welfare of the [JTA], in order to carry out the powers granted to it by this chapter or any other law”). Based on the broad power granted to JTA from its inception, our conclusion is consistent with “the generally accepted rule of statutory construction that ‘the court may consider subsequent enactments of a statute as an aid to interpreting the original legislation’ and ‘[t]he amendment of a statute does not necessarily indicate that the [Legislature intended to change the law.’ ” Prison Rehab. Indus. v. Betterson, 648 So.2d 778, 779 (Fla. 1st DCA 1994) (quoting Dade Cnty. v. AT & T Info. Sys., 485 So.2d 1302, 1304 (Fla. 3d DCA 1986) (first alteration in original)).
We therefore hold that JTM is a “state agenc[y] or subdivision ]” under section 768.28(2) because it primarily acts as an instrumentality of JTA, which is within the statutory definition of a state agency. We further hold that Keck is entitled to the individual immunity granted in section 768.28(9)(a) by virtue of his status as an employee of JTM.
CONCLUSION
For the reasons stated above, we answer the rephrased question in the negative, quash the First District’s decision below, and remand for proceedings consistent with this opinion. Moreover, as addressed above, we request the Florida Bar Appellate Court Rules Committee to submit a proposed amendment that will address the rule change mandated by our decision where an individual defendant who claims immunity under 768.28(9)(a) is denied that immunity and the issue turns on a matter of law. Finally, we hold that JTM is within the definition of a state agency or subdivision for purposes of determining sovereign immunity under section 768.28(2) and that Keck, as an employee of JTM, is entitled to the immunity provided in section 768.28(9)(a).
It is so ordered.
PARIENTE, LEWIS, QUINCE, LABARGA, and PERRY, JJ., concurs.
POLSTON, C.J. and CANADY, J., concur in result only.

. Florida Rule of Appellate Procedure 9.130(a)(3) — which enumerates the types of non-final orders of lower courts that are subject to appeal — includes orders determining "that, as a matter of law, a party is not entitled to absolute or qualified immunity in a civil rights claim arising under federal law,” Fla. R.App. P. 9.130(a)(3)(C)(vii), but does not include orders determining that, as a matter of law, a party is not entitled to individual immunity under section 768.28(9)(a).

. Roe recognized that requiring the State to wait until after a final judgment was entered before appealing the issue of sovereign immunity did not present the same concerns that exist when a public official is sued in his or her personal capacity. The Court explained: Florida has agreed to be sued in its own courts for tort actions. § 768.28.... [A]l-though the state will have to bear the expense of continuing the litigation, the benefit of immunity from liability, should the state ultimately prevail on the sovereign immunity issue, will not be lost simply be *366 cause review must wait until after final judgment.
Roe, 679 So.2d at 759.

. Because we hold that Keck is entitled to immunity pursuant to section 768.28(9)(a) based on his status as an employee of JTM, we need not discuss Keck’s alternative argument that he is entitled to immunity under that section as a direct agent of JTA.