PARIENTE, J.
In this case, the Court once again addresses the proper use of the writ of cer-tiorari when a governmental entity raises sovereign immunity as a basis for a motion *402 for summary judgment, which the trial court denied. See Citizens Prop. Ins. Corp. v. San Perdido Ass’n, 104 So.3d 344 (Fla.2012); Keck v. Eminisor, 104 So.3d 359 (Fla.2012). In the case before the Court, Miami-Dade County v. Rodriguez, 67 So.3d 1213, 1219 (Fla. 3d DCA 2011), Jose Lazaro Rodriguez, a business owner, filed suit against Miami-Dade County, alleging that he was negligently shot by a police officer responding to a burglary alarm at his place of business. Concluding that review by certiorari was appropriate and that the County was entitled to sovereign immunity as a matter of law, the Third District Court of Appeal certified that its decision was in direct conflict with the decisions of the Fifth District Court of Appeal in Florida A & M University Board of Trustees v. Thomas, 19 So.3d 445, 446 (Fla. 5th DCA 2009), and of the Second District Court of Appeal in Pinellas Suncoast Transit Authority v. Wrye, 750 So.2d 30, 30 (Fla. 2d DCA 1996), as to the scope of certiorari review. Rodriguez, 67 So.3d at 1223.[1]
For the reasons that follow and in keeping with our recent precedent in Citizens and Keck, we hold that Miami-Dade County’s claim that it is entitled to sovereign immunity is not renewable by the appellate courts through a petition for writ of certiorari because there is no irreparable harm and because there are essential facts in dispute. We further hold that the Third District erred in concluding that a “police emergency exception” conferred planning-level sovereign immunity on the County in this case. Accordingly, we quash the Third District’s decision.
FACTS
This case stems from an unfortunate factual scenario, where police officers and the business owner, Jose Lazaro Rodriguez, both responded to a burglary alarm at Rodriguez’s business, and during this incident, Rodriguez was shot by one of the responding police officers. A video camera at the business recorded part of the incident but did not show the circumstances of the actual shooting because the police officer and Rodriguez were out of the view of the camera at that precise time.
Rodriguez filed a complaint against Miami-Dade County for negligence based on the wrongful shooting and for negligent retention and supervision of Officer Hernandez, one of the responding officers.[2] Officer Hernandez was not sued individually.[3] In his complaint, Rodriguez asserted that after his alarm service informed him of the burglary, he drove to the business with his lawfully owned firearm. He alleged that after exiting his vehicle, he was shot from behind four times by Officer Hernandez, who failed to provide any prior warning before firing his gun.
After the County obtained a recording from security cameras that had captured the events surrounding the shooting, the County filed a motion for summary judgment, asserting that the video footage definitively established that Officer Hernandez was not negligent because it showed that before he fired his gun, Rodriguez *403 pointed a firearm toward him. In addition to other defenses, the County argued that it had immunity because Officer Hernandez acted in self-defense and that it was entitled to sovereign immunity because the officer’s actions were discretionary and fell under the police emergency exception.
Rodriguez opposed the motion for summary judgment, asserting that the video footage was inconclusive as to several key points and demonstrated that Officer Hernandez responded recklessly to the scene of the burglary alarm, violated basic safety procedures, and negligently created the situation where he shot an innocent civilian. Rodriguez contended that there was no emergency situation that required the officer to shoot anybody, until the officer himself recklessly created a dangerous situation by charging on the scene without providing any warning.
In support, Rodriguez relied on the affidavit of Michael Manning, a retired lieutenant from the City of Miami Police Department, who discussed numerous errors that he believed the responding officers committed, including his assertion that Officer Hernandez improperly rushed into the situation, separated from his partner, and placed himself in a dangerous position where he might need to use deadly force. Rodriguez also filed an affidavit to oppose the motion for summary judgment, in which he contested the facts. The affidavit stated that when Rodriguez drove to the store in response to the burglary alarm, he did not see any police. However, he did notice a person crawling into the store through a hole in the glass of the front door to his store. Rodriguez asserted that he had his gun in his hand and had planned to detain the robber from a distance until the police arrived. Rodriguez stated that after he exited his truck, he was shot in the left buttock from behind and the impact spun him around clockwise so that he was rotated in the direction of the shooter. He never heard anybody shout “Police” or “Freeze!”
At a hearing on the motion for summary judgment, the trial court indicated that it was troubled because the video did not “tell the entire story,” especially since the shooting itself was not visible on the video. Further, the trial court questioned whether it could determine as a matter of law that the officer was responding to an emergency, as the County asserted. The trial court denied the County’s motion as to Count I (the negligence claim) and granted the County’s motion as to Count II (the negligent retention claim).
The County filed a petition for writ of certiorari with the Third District, which the Third District granted. The district court recognized that generally it would not use its certiorari jurisdiction “to review orders either denying motions to dismiss or denying motions for summary judgment where the sovereign argues that it is not hable as alleged because no duty can be demonstrated” in a negligence action. Rodriguez, 67 So.3d at 1216. However, the Third District distinguished that type of case from those involving sovereign immunity, which traditionally prevented a sovereign from being sued in its own courts until the Legislature waived its sovereign immunity for torts. Id. at 1216-17. The Third District reviewed this Court’s decision in Wallace v. Dean, 3 So.3d 1035, 1044-45 (Fla.2009), and concluded that “in those cases in which the conduct and function at issue clearly do not fall within the tort liability waiver, we believe that we should exercise our jurisdiction to preclude prosecution of an action where the sovereign remains immune from suit.” Rodriguez, 67 So.3d at 1219.
Finally, in its opinion, the Third District recognized that determining the applicability of sovereign immunity is often “inextri *404 cably tied to the underlying facts.” Id. (quoting Dep’t of Educ. v. Roe, 679 So.2d 756, 758 (Fla.1996)). Nevertheless, the Third District characterized this case as “predicated on the doctrine of separation of powers” that it considered “distinct from immunity resting on the sovereign character of the state or municipality in the performance of its governmental functions.” Id. at 1221. The Third District invoked the “emergency exception” as a basis for essentially determining that the question in the case was a “nonjusticiable political question that is more appropriately committed to the resolution of a coordinate or constituent branch of government.” Id, at 1218 (quoting Wallace, 3 So.3d at 1053-54).
In invoking the police emergency exception, the Third District stated that this Court had “created a clear exception for police action in emergency situations.” Id. at 1221 (citing City of Pinellas Park v. Brown, 604 So.2d 1222, 1226-27 (Fla.1992) (citing Kaisner v. Kolb, 543 So.2d 732, 738 n. 3 (Fla.1989))). The Third District determined that the undisputed facts showed that “(a) a serious emergency existed, (b) the emergency was thrust upon the police by the acts of others, and (c) [the officers] were required to make split-second choices that could result in harm either way.” Id.
ANALYSIS
The certified conflict issue in this case is whether the Third District erred in holding that it had certiorari jurisdiction to review a non-final order denying the County’s motion for summary judgment. However, because the Third District relied on the “emergency exception” as a basis for concluding that the County was immune from suit as a matter of law, we also must review the application of that doctrine to the facts of this case.

Certiorari Review

Subsequent to the Third District’s decision in Rodriguez, we recently clarified the extremely narrow scope of a district court’s ability to use its certiorari jurisdiction to address a non-final order where the trial court denied the defendant’s claim that the suit was barred by sovereign immunity. Accordingly, we first review this Court’s decisions in Citizens Property Insurance Corp. v. San Perdido Ass’n, 104 So.3d 344 (Fla.2012), and Keck v. Eminisor, 104 So.3d 359 (Fla.2012). With those principles in place, we then turn to whether the Third District properly used a writ of certiorari under the circumstances presented in this case.
Generally, parties must wait until after a final order is issued before seeking appellate review. As we explained in Citizens Property Insurance, “[v]ery few categories of non-final orders qualify for the use of th[e] extraordinary writ” of common law certiorari. Citizens Prop. Ins. Corp., 104 So.3d at 351-52. In order to be entitled to certiorari relief from the denial of a motion for summary judgment, the petitioner must establish three elements: (1) the ruling “depart[s] from the essential requirements of the law, (2) resulting in material injury for the remainder of the case (3) that cannot be corrected on post-judgment appeal.” Williams v. Oken, 62 So.3d 1129, 1132 (Fla.2011) (quoting Reeves v. Fleetwood Homes of Fla., Inc., 889 So.2d 812, 822 (Fla.2004)). The threshold question that must be reached first is whether there is a material injury that cannot be corrected on appeal, otherwise termed as irreparable harm. See id. Only after irreparable harm has been established can an appellate court then review whether the petitioner has also shown a departure from the essential requirements of law. Id. at 1132-33.
*405 In Citizens Property Insurance, this Court analyzed whether an appellate court could use certiorari jurisdiction to address a non-final order where the trial court denied the defendant’s claim that the suit was barred by sovereign immunity. This Court agreed with the First District, in which the First District held that Citizens Property Insurance was not entitled to certiorari review of a non-final order because it did not suffer from irreparable harm “in requiring that appellate consideration of the sovereign immunity claim await the entry of a final judgment.” Citizens Prop. Ins. Corp. v. San Perdido Ass’n, 46 So.3d 1051, 1053 (Fla. 1st DCA 2010). As we stressed in Citizens Property Insurance, “equating the defense of a lawsuit with the type of irreparable harm necessary for the threshold decision to invoke certiorari has the potential to eviscerate any limitations on the use of this common law writ, which has always been narrowly applied.” Citizens Prop. Ins. Corp., 104 So.3d at 356.
On the same day that we issued our decision in Citizens Property Insurance, we also issued our decision in Keck v. Eminisor, 104 So.3d 359, a related case involving sovereign immunity and certiora-ri review. In that case, the defendant asserted that, pursuant to section 768.28(9)(a), Florida Statutes (2005), he was entitled to sovereign immunity for actions taken within the scope of his employment as an employee of a corporation acting primarily as an instrumentality of a State agency. Keck, 104 So.3d at 361. The First District declined to exercise its certiorari jurisdiction, but presented a certified question to this Court as to whether Keck was entitled to interlocutory review. Id. On review, this Court held that, based on important policy reasons similar to those present in the case of Tucker v. Resha, 648 So.2d 1187, 1189-90 (Fla.1994), Keck was entitled to interlocutory review of an order denying summary judgment based on a claim of individual immunity under section 768.28(9)(a), where the issue turned on a question of law. Keck, 104 So.3d at 366.
In Keck, we emphasized that the applicable statute, section 768.28(9)(a), specifically entitled a governmental employee not to “be named as a party defendant” for acts within the scope of his or her employment. Id. The Court reasoned that “if a defendant who is entitled to the immunity granted in section 768.28(9)(a) is erroneously named as a party defendant and is required to stand trial, that individual has effectively lost the right bestowed by statute to be protected from even being named as a defendant.” Id. Despite recognizing that statutory immunity, we did not utilize the common law writ of certiorari, but as in Tucker, we requested the Florida Bar Appellate Court Rules Committee to submit a proposed narrow amendment to Florida Rule of Appellate Procedure 9.130. Id. Noting the inconsistent use of certiora-ri to review claims of sovereign immunity, a majority of the Court requested that the Committee “undertake a comprehensive review of whether the categories of non-final orders in rule 9.130(a)(3) should be expanded to include the denial of any claim of immunity where the question presented is solely a question of law.” Id. at 370 (Pariente, J., concurring with an opinion, in which Lewis, Labarga, and Perry, JJ., joined).
Consistent with our recent holdings in Citizens and Keck, we reiterate that the continuation of litigation and any ensuing costs, time, and effort in defending such litigation does not constitute irreparable harm. Thus, the use of certiorari review is improper in such an instance. Moreover, in addition to irreparable harm that cannot be remedied on appeal, before granting certiorari relief, the district court *406 must also find that the ruling at issue “depart[s] from the essential requirements of law resulting in a miscarriage of justice.” Nader v. Fla. Dep’t of Highway Safety & Motor Vehicles, 87 So.3d 712, 725 (Fla.2012).
In this case, the Third District did not analyze whether the error it discussed amounted to a departure from the essential requirements of law. It is unclear whether the district court considered this prong, particularly in light of its statement that “[i]t is the imminent threat or existence of irreparable harm that gives us jurisdiction in this case.” Rodriguez, 67 So.3d at 1220 n. 4.
We again emphasize, consistent with our precedent, that an appellate court can grant a petition for writ of certiorari only where there is “(1) a departure from the essential requirements of the law, (2) resulting in material injury for the remainder of the case (3) that cannot be corrected on postjudgment appeal.” Williams, 62 So.3d at 1132 (quoting Reeves, 889 So.2d at 822). The latter two elements, referred to as irreparable harm, are jurisdictional, but a court must also find that the decision below departed from the essential requirements of law before it can grant the writ. Id. Accordingly, the Third District erred in using its certiorari jurisdiction in order to reverse the trial court’s non-final order.

The Viability of a Police Emergency Exception in This Case

The Third District also erred when, relying on Kaisner and Pinellas Park, it applied the police emergency exception as a basis for invoking certiorari jurisdiction and declaring that Miami-Dade County was immune from suit as a result of the actions of its police officers in this case. For the reasons addressed below, we hold that the circumstances present in this case do not rise to the level of invoking the narrow emergency exception because this is not the kind of situation implicating police planning-level decisions. Further, we disapprove the Third District’s broad statement that this Court has “created a clear exception for police action in emergency situations,” Rodriguez, 67 So.3d at 1221, which would create immunity from suit as a matter of law whenever police respond to an emergency.
A review of Kaisner and Pinellas Park reveals that neither case utilized a writ of certiorari. In addition, neither of those cases concluded that the police emergency exception was applicable. In Kais-ner, the plaintiffs brought an action against two officers after the plaintiff was struck by another vehicle when the deputies stopped him for an expired inspection sticker. Kaisner, 543 So.2d at 733. The trial court granted summary judgment in favor of all of the defendants, and the Second District affirmed, concluding that the actions were discretionary and immune from suit. Id. This Court disagreed, noting that sovereign immunity shields only actions that are “discretionary,” not those that are “operational” in nature. Id. at 737. The Court explained that a discretionary act was one involving “an exercise of executive or legislative power such that, for the court to intervene by way of tort law, it inappropriately would entangle itself in fundamental questions of policy and planning,” while an operational act was one that is “not necessary to or inherent in policy or planning, that merely reflects a secondary decision as to how those policies or plans will be implemented.” Id. After reviewing those definitions and the four-part test in Commercial Carrier Corp. v. Indian River County, 371 So.2d 1010, 1019 (Fla.1979),[4] this Court determined that the *407 manner in which an officer orders a motorist to the side of the road is not a policy-making or planning decision that is protected from tort liability. Kaisner, 543 So.2d at 737-38.
In a footnote, the Court emphasized that it would not necessarily reach the same decision if the issue involved “an emergency requiring swift action to prevent harm to others, albeit at the risk of harm to petitioners” because those types of decisions with a high level of urgency would be “entitled to great deference, and may in fact reach a level of such urgency as to be considered discretionary and not operational.” Id. at 738 n. 3 (emphasis added). While the statements in this footnote are dicta, they illustrate the extremely limited scope of a serious police emergency exception, where the actions of the police would constitute a planning decision immune from suit rather than an operational one scrutinized under the principles of negligence.
In the second case relied on by the Third District, Pinellas Park, 604 So.2d at 1224-25, the police raised the police emergency exception mentioned in Kaisner after twenty police vehicles engaged in a twenty-five mile long, high-speed chase through densely populated portions of Tampa in order to pursue a vehicle that ran a red light. This chase ultimately culminated in the death of three people. Id. The Court held that sovereign immunity did not apply because the action was clearly operational and could not be considered as either policy or planning, especially when the actions taken were actually contrary to adopted policies. Id. at 1226. The Court again stressed that “sovereign immunity does not shield acts that are ‘operational’ in nature but only those that are ‘discretionary.’” Id. As to this question, we reiterated that “an act is operational if it ‘is one not necessary to or inherent in policy or planning, that merely reflects a secondary decision as to how those policies or plans will be implemented.’ ” Id. (quoting Kaisner, 543 So.2d at 737).
Further, the Court rejected the argument that the conduct at issue fell within the police emergency exception because to fall within the exception, “the serious emergency must be one thrust upon the police by lawbreakers or other external forces, that requires them to choose between different risks posed to the public.” Id. at 1227. The Court stressed that under the police emergency exception, officers had “no option but to choose between two different evils. It is this choice between risks that is entitled to the protection of sovereign immunity in appropriate cases, because it involves what essentially is a discretionary act of executive deci *408 sion-making.” Id. (emphasis added). However, the Court also stressed that “this does not mean that state agents can escape liability if they themselves have created or substantially contributed to the emergency through their own negligent acts or failure to adhere to reasonable standards of public safety.” Id.
Neither Pinellas Park nor Kaisner applied the police emergency exception as a basis for immunity. Thus, this Court has never had the occasion to determine under what circumstances, if any, the police emergency exception would constitute a planning-level decision under the Commercial Carrier test so as to render the responsible governmental entity immune from liability, as opposed to circumstances surrounding whether the responding police were negligent under the totality of the circumstances. Because we conclude that the circumstances of this case would not fall under the narrow exception outlined in Pinellas Park and Kaisner, we do not reach the viability of that doctrine here.
In this case, the motion for summary judgment was based on the County’s assertion that it was immune from suit as a matter of law because the officers were responding to an emergency — a motion Rodriguez opposed by presenting evidence that the police failed to adhere to reasonable standards of public safety. Here, the trial judge, while recognizing that there was a recording of most of the facts surrounding the shooting, concluded that the video did not include all of the relevant chain of events and did not include any auditory track. Further, in this case, the affidavit of the expert retired police officer asserted that the responding officers committed a number of errors that created a dangerous situation. The trial court denied the summary judgment motion, stating that there were disputed issues of fact as to whether a serious emergency existed and whether the police response created or added to the danger.
We conclude that the trial court properly denied summary judgment. Although the County moved for summary judgment, disputed issues of fact remain, including whether the police created or substantially contributed to the shooting through negligent acts, as alleged by Rodriguez. In addition, the video upon which the County relies does not provide the entire story. Thus, we agree that the police emergency exception does not apply as a matter of law to immunize the County from suit in this case. Rather, the focus is on whether or not the police officers were negligent under all the circumstances, which would include the fact that the police officers were responding to a burglary, and whether they perceived that they were facing a serious threat that required immediate action through the use of deadly force. On the other hand, assuming the jury finds negligence, the actions of Rodriguez could be considered by the jury as comparative negligence in contributing to causing, or being the cause of, his own injuries.
There is no question that, by virtue of what police officers do every day, they are often exposed to dangerous situations, especially when responding to calls involving crimes in progress. But it is quite another thing to say that when the police respond to those situations, their employer is always immune from suit arising from negligent acts. If police agencies were immune from tort suits in all situations where the police are called to respond to an ongoing crime, the police emergency exception could eviscerate the waiver of sovereign immunity for negligent conduct.
CONCLUSION
Because the County has failed to show the necessary prongs for certiorari, we *409 hold that a writ of certiorari is not available to review the merits of the County’s claim of sovereign immunity. We further hold that the Third District erred in concluding that the County was entitled to summary judgment based on the narrow police emergency exception. We thus quash the Third District’s decision below and remand for proceedings consistent with this opinion. We further approve the conflict cases, Florida A & M and Pinellas Suncoast Transit Authority, which both held that certiorari review was unavailable in such circumstances.[5]
It is so ordered.
LEWIS, QUINCE, LABARGA, and PERRY, JJ., concur.
CANADY, J., concurs in result only with an opinion, in which POLSTON, C.J., concurs.

. Based on this certified direct conflict, we have jurisdiction. See art. V, § 3(b)(4), Fla. Const.

. Rodriguez also initially claimed that the police delayed providing prompt medical attention, a claim that he later abandoned.

.In fact, section 768.28(9)(a), Florida Statutes (2008), entitles an individual employed by a governmental entity to be immune from suit unless the employee has acted "in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.”

. The four-part test of Commercial Carrier asks the following:
*407 (1) Does the challenged act, omission, or decision necessarily involve a basic governmental policy, program, or objective? (2) Is the questioned act, omission, or decision essential to the realization or accomplishment of that policy, program, or objective as opposed to one which would not change the course or direction of the policy, program, or objective? (3) Does the act, omission, or decision require the exercise of basic policy evaluation, judgment, and expertise on the part of the governmental agency involved? (4) Does the governmental agency involved possess the requisite constitutional, statutory, or lawful authority and duty to do or make the challenged act, omission, or decision? If these preliminary questions can be clearly and unequivocally answered in the affirmative, then the challenged act, omission, or decision can, with a reasonable degree of assurance, be classified as a discretionary governmental process and nontortious, regardless of its unwisdom.
Kaisner, 543 So.2d at 736 (quoting Evangelical United Brethren Church v. State, 67 Wash.2d 246, 407 P.2d 440, 445 (1965), and recognizing that this test was adopted in Commercial Carrier).

. Both Florida A & M and Pinellas Suncoast Transit Authority denied jurisdiction based on the reasoning of Roe. Specifically, in Florida A & M, 19 So.3d at 446, the Fifth District stated in a short decision that it "lackfed] jurisdiction to review this interlocutory order,” citing Department of Education v. Roe, 679 So.2d 756 (Fla.1996), and School Board of Miami-Dade County v. Leyva, 975 So.2d 576 (Fla. 3d DCA 2008). Likewise, Pinellas Suncoast Transit Authority involved a very brief decision in which the Second District summarily stated that it "d[id] not have jurisdiction to review the denial of the motion to dismiss based on sovereign immunity either as a nonfinal appeal or as a certiorari proceeding.” Pinellas Suncoast Transit Auth., 750 So.2d at 30.