# Supreme Court of Florida

_____

No. SC13-1872
_____

**ENOCK PLANCHER, etc.,**
Petitioner,

vs.

**UCF ATHLETICS ASSOCIATION, INC., et al.**,
Respondent.

_____

No. SC13-1874
_____

**ENOCK PLANCHER, etc.**,
Petitioner,

vs.

**UCF ATHLETICS ASSOCIATION, INC., et al.**,
Respondent.

[May 28, 2015]

POLSTON, J.

The Planchers seek review of the decision of the Fifth District Court of

Appeal in UCF Athletics Ass'n, Inc. v. Plancher, 121 So. 3d 1097 (Fla. 5th DCA

2013).[1]  For the reasons expressed below, we approve the Fifth District's holding that UCF Athletics Association, Inc., is entitled to limited sovereign immunity but quash the Fifth District's statement remanding for entry of a judgment that shall be reduced to the statutory cap.

## BACKGROUND

In 2008, Ereck Plancher, a University of Central Florida (UCF) football player, collapsed and tragically died during football practice conditioning drills. Id. at 1099.  "After his death, Ereck's parents (the Planchers) filed a negligence action against UCF[2] and UCF Athletics Association, Inc. (UCFAA), the statutorily authorized direct-support organization responsible for administering UCF's athletics department."  Id. (footnote omitted).  The trial court denied UCFAA's motion for summary judgment, which had argued that UCFAA is entitled to limited sovereign immunity under section 768.28, Florida Statutes (2008).  Id. at 1106.  The trial court ruled "that the undisputed evidence demonstrated that UCFAA had not been substantially controlled by UCF in either day-to-day decisions or major programmatic decisions."  Id. (footnote omitted).  Subsequently, "the jury found UCFAA liable and awarded the Planchers damages

---

1.  We have jurisdiction.  See art. V, § 3(b)(3), Fla. Const.

2.  "The Planchers dismissed UCF as a party to the lawsuit on the first day of trial."  Id. at 1099 n.2.

in the amount of $10 million." Id. at 1099 (footnote omitted). But, on appeal, the Fifth District reversed and held that UCFAA is entitled to limited sovereign immunity. Id.

In its analysis, the Fifth District discussed Shands Teaching Hospital & Clinics, Inc. v. Lee, 478 So. 2d 77 (Fla. 1st DCA 1985), Prison Rehabilitative Industries & Diversified Enterprises, Inc. v. Betterson, 648 So. 2d 778 (Fla. 1st DCA 1994), and Pagan v. Sarasota County Public Hospital Board, 884 So. 2d 257 (Fla. 2d DCA 2004), and noted that "[t]he key factor in determining whether a private corporation is an instrumentality of the state for sovereign immunity purposes is the level of governmental control over the performance and day-to-day operations of the corporation." Id. at 1106. The Fifth District rejected "the Planchers' assertion that for UCFAA to have sovereign immunity, UCF had to actually control UCFAA's day-to-day operations." Id. at 1109.

Ultimately, "[c]omparing the facts of this case to the facts set forth in Keck[v. Eminisor, 104 So. 3d 359 (Fla. 2012)], Pagan, and Betterson, [the Fifth District determined] that UCFAA primarily acts as an instrumentality of UCF" and is, therefore, entitled to limited sovereign immunity pursuant to section 768.28. Id. The Fifth District also stated that "[t]he judgment entered against UCFAA shall be reduced to $200,000 in accordance with section 768.28(5), Florida Statutes. Any

amount over the statutory cap must be sought by the Planchers in a claim bill filed in the Florida Legislature." Id. at 1109 n.17.

## ANALYSIS

The Planchers argue that UCF does not have sufficient control over UCFAA's day-to-day operations to entitle UCFAA to limited sovereign immunity under section 768.28. We disagree.[3]

Section 768.28 provides a waiver of sovereign immunity in tort actions but only to a specified extent. Pursuant to section 768.28(5), Florida Statutes (2008), "[t]he state and its agencies and subdivisions shall be liable for tort claims in the same manner and to the same extent as a private individual under like circumstances, but liability shall not include punitive damages or interest for the period before judgment." The statute also sets a recovery limit of $100,000 for a claim or judgment by one person and a recovery limit of $200,000 per occurrence or incident. § 768.28(5), Fla. Stat. (2008).

Section 768.28(2), Florida Statutes (2008), defines the state entities entitled to this limited sovereign immunity:

> "state agencies or subdivisions" include the executive departments, the Legislature, the judicial branch (including public defenders), and

_____

3. The issue of sovereign immunity in this case is a legal issue subject to a de novo standard of review. See Betterson, 648 So. 2d at 781 n.3 ("[H]ere the proof of control rests entirely on statutory provisions, which leaves the issue to be decided as a matter of law.").

the independent establishments of the state, including state university boards of trustees; counties and municipalities; and <u>corporations primarily acting as instrumentalities or agencies of the state</u>, counties, or municipalities, including the Florida Space Authority.

(Emphasis added.)

It is undisputed that UCF meets the definition of a state agency or subdivision entitled to limited sovereign immunity under section 768.28. Further, in <u>Keck</u>, 104 So. 3d at 368, this Court explained that "corporations primarily acting as instrumentalities of independent establishments of the State are included in the definition within section 768.28(2) of 'state agencies or subdivisions.' " Therefore, if UCFAA is primarily acting as an instrumentality of UCF, it is a state agency or subdivision entitled to limited sovereign immunity under section 768.28.

UCF created and certified UCFAA as a university direct-support organization (DSO) pursuant to section 1004.28, Florida Statutes. A university DSO is statutorily defined as a not-for-profit Florida corporation "[o]rganized and operated exclusively to receive, hold, invest, and administer property and to make expenditures to or for the benefit of a state university in Florida or for the benefit of a research and development park or research and development authority affiliated with a state university." § 1004.28(1)(a)2., Fla. Stat. The statute requires "a state university board of trustees, after review, [to certify that the DSO is] operating in a manner consistent with the goals of the university and in the best interest of the state." § 1004.28(1)(a)3., Fla. Stat.

Besides the Fifth District's decision in this case, three Florida district court decisions have addressed whether an entity was primarily acting as an instrumentality of the state and, therefore, entitled to limited sovereign immunity under section 768.28, and all three decisions focused upon governmental control over the entity. First, in Shands, 478 So. 2d at 78, the First District concluded that Shands Teaching Hospital and Clinics, Inc. was not entitled to limited sovereign immunity. The First District examined the statute authorizing the leasing of Shands to a private not-for-profit corporation as well as an appropriations act and legislative reports, concluding that "the intent of the legislature was to treat Shands as an autonomous and self-sufficient entity, one not primarily acting as an instrumentality on behalf of the state." Id. at 79 (emphasis in original). The First District also, by analogy, looked to federal law and explained that "section 240.513 reflects that Shands' day-to-day operations are not under direct state control." Id.

Second, in Betterson, 648 So. 2d 778, the First District determined that PRIDE, a prison work program, was primarily acting as an instrumentality of the state and, therefore, entitled to limited sovereign immunity under section 768.28. Specifically, the First District concluded that "while PRIDE was accorded substantial independence in the running of the work programs, its essential operations nevertheless remained subject to a number of legislatively mandated constraints over its day-to-day operations." Id. at 780.

Third, in Pagan, 884 So. 2d at 264, the Second District affirmed the trial court's ruling that First Physicians Group was entitled to limited sovereign immunity under section 768.28 as to the particular parties involved in that case. The Second District explained that the Hospital Board and First Physicians Group "successfully argued [to the trial court] that 'the structure dictates the control' and that the Hospital Board had structural control of First Physicians Group and therefore First Physicians Group and its employees were 'agencies' of the Hospital Board entitled to sovereign immunity." Id. at 263.

Additionally, in Keck, 104 So. 3d at 367, this Court examined a claim of immunity asserted by virtue of employment with Jax Transit Management Corporation (JTM). In Keck, the plaintiff had conceded that JTM was an instrumentality of the Jacksonville Transit Authority (JTA). Id. at 368. And "all parties agree[d] that JTA falls within the definition of a state agency" under section 768.28(2). Id. at 367. However, the trial court had ruled that "while JTA is an independent establishment of the State and thus is entitled to sovereign immunity, the same cannot be said as to JTM because the statutory definition in section 768.28(2) does not expressly include corporations that are acting primarily as instrumentalities or agencies of independent establishments of the State." Id. This Court disagreed with the trial court and held that "JTM is a 'state agenc[y] or subdivision[]' under section 768.28(2) because it primarily acts as an

- 7 -

instrumentality of JTA, which is within the statutory definition of a state agency." Id. at 369.  This Court in Keck briefly described the relationship between JTM and JTA, 104 So. 3d at 361-62, but did not address the level of governmental control necessary for a corporation to be an instrumentality of the state.

However, in Elend v. Sundome, Inc., 2005 U.S. Dist. Lexis 35264 (M.D. Fla. Dec. 22, 2005), a federal district court persuasively concluded that a university DSO created by the University of South Florida pursuant to section 1004.28 was entitled to Eleventh Amendment immunity as an arm of the State of Florida. Similar to the sovereign immunity analyses employed by Florida's district courts of appeal, the federal court's analysis in Elend included a focus upon governmental control over the corporation.  Specifically, the federal court considered the following factors:  "(1) how state law defines an entity; (2) what degree of control the state maintains over the entity; (3) where funds for the entity are derived; and (4) who is responsible for judgments against the entity."  Id. at *9 (citing Tuveson v. Fla. Governor's Council on Indian Affairs, Inc., 734 F.2d 730, 732 (11th Cir. 1984)).  And under the second factor, the federal court concluded that USF has control over the Sun Dome, noting that USF controls the Sun Dome's board of directors, that facilities must be made available to USF when directed by USF's president, and that the Sun Dome must permit auditors of USF and the Legislature to "audit, inspect, examine and copy any and all [of the Sun Dome's] books,

- 8 -

papers, reports, [and] correspondence." Id. at *18. Furthermore, under the third factor, the federal court determined that USF "oversees the Sun Dome's fiscal circumstances." Id. at *20. The federal court explained that "the Sun Dome's operating budget is submitted to the Board of Trustees [and t]he duties of USF's president include monitoring and controlling the Sun Dome's use of university resources, recommending an annual budget, reviewing and approving expenditures, and approving the Sun Dome's employees' salaries, other compensation and benefits." Id. at *20-21.

In this case, the Planchers argue that actual state control over a corporation's day-to-day operations must be exercised for that corporation to be entitled to limited sovereign immunity under section 768.28.[4] However, it is unnecessary for this Court to decide whether actual control, rather than the right of control, is

---

4. The Planchers also argue that, even if UCFAA is entitled to limited sovereign immunity, UCFAA's liability insurance company is still responsible for the entire judgment amount. However, this argument is without any merit. See Stuyvesant Ins. Co. v. Bournazian, 342 So. 2d 471, 472 n.3 (Fla. 1976) ("The fact that an injured person may proceed directly against the insurer as a third party beneficiary of the insurance contract . . . in no way elevates the carrier's responsibility to pay amounts for which the insured himself would not have been liable."); § 768.28(5), Fla. Stat. (2008) ("[T]he state or agency or subdivision thereof shall not be deemed to have waived any defense of sovereign immunity or to have increased the limits of its liability as a result of its obtaining insurance coverage for tortious acts in excess of the $100,000 or $200,000 waiver provided above.").

required because here UCF exercises both levels of control over UCFAA and its operations.

Specifically, UCF maintains the right to control and actually controls UCFAA's board of directors as well as UCFAA's continued existence. UCFAA's bylaws provide that the voting members of its board are composed of the following: (1) the president of UCF; (2) the chairman of the UCF Board of Trustees or designee; (3) the president of the UCF Alumni Association or designee; (4) the president of the UCF Golden Knights Club or designee; (5) two members of the public appointed by UCF's president for terms designated by UCF's president; and (6) such members of UCF's administration, faculty, or student body as appointed by UCF's president for terms designated by UCF's president. Further, the UCF Board of Trustees must approve any proposed amendments to UCFAA's bylaws. The UCF Board of Trustees also has the sole authority to decertify UCFAA as a DSO and dissolve it as a corporation. If the UCF Board of Trustees dissolves UCFAA, the articles of incorporation provide that UCFAA's assets "shall be distributed to the University of Central Florida Foundation, Inc. [or] as directed by the President of the University of Central Florida."

Additionally, UCF maintains and actually exercises its right to control UCFAA's operations and activities. UCFAA's bylaws provide that UCF's director

- 10 -

of athletics serves as the executive vice president of UCFAA and "manage[s] the day to day activities of [UCFAA]."  And, importantly, UCF's director of athletics is "hired by, reports to, and serves at the pleasure and direction of UCF's [p]resident."  Plancher, 121 So. 3d at 1105.  Thus, through the president's choice and direct supervision of the director of athletics, UCF maintains and exercises actual control over UCFAA's day-to-day operations.

Moreover, UCF controls UCFAA's budget and finances for the sole benefit of UCF.  Pursuant to UCFAA's bylaws, UCF's president (as chairman of UCFAA's board) "shall retain the authority to monitor and control the use of [UCFAA's] resources" and "possess line-item authority over the budget."  Additionally, under the bylaws, UCF's president (or a designee that must be a senior officer of UCF who reports directly to UCF's president) "shall review and approve [UCFAA's] quarterly expenditure plans."  The services agreement provides that "UCF shall have the right to audit the books and records of UCFAA," which must be made available to UCF within 30 days of its request.  Also, UCFAA's budget is considered by its finance committee, which is chaired by UCF's CFO, who also serves as the secretary and treasurer of UCFAA.  Further, UCFAA receives the majority of its funding from UCF, see Plancher, 121 So. 3d at 1108, and UCFAA's articles of incorporation specify that it "is organized and shall

- 11 -

be operated exclusively to receive, hold, invest, and administer property and to make expenditure to or for the benefit of [UCF]."

Finally, section 1010.62, Florida Statutes, places state constraints on UCFAA's ability to pursue financing mechanisms for its operations. Specifically, section 1010.62(3)(a), Florida Statutes, provides that a "direct-support organization may not issue debt without the approval of the Board of Governors" and that "[t]he Board of Governors may approve the issuance of debt by . . . a direct-support organization only when such debt is used to finance or refinance capital outlay projects." The statute also sets limitations on what revenues may secure such debt. Id.

Based on the above undisputed facts, UCFAA is not "an autonomous and self-sufficient entity." Shands, 478 So. 2d at 79. Instead, UCFAA is subject to substantial state "constraints over its day-to-day operations," Betterson, 648 So. 2d at 780, and UCF has "structural control" of UCFAA. Pagan, 884 So. 2d at 263. Accordingly, UCFAA is primarily acting as an instrumentality of the state and thus is entitled to limited sovereign immunity under section 768.28. Cf. Elend, 2005 U.S. Dist. Lexis 35264, at *18, *20 (holding that a university DSO is entitled to Eleventh Amendment immunity as a state entity and explaining that "[t]he state, through USF, a state agency, has control over the Sun Dome" and that "[t]he university also oversees the Sun Dome's fiscal circumstances").

## CONCLUSION

For the reasons expressed above, we approve the Fifth District's holding that UCFAA is entitled to limited sovereign immunity under section 768.28. However, we quash the statement in the Fifth District's decision that "[t]he judgment entered against UCFAA shall be reduced to $200,000 in accordance with section 768.28(5), Florida Statutes." Plancher, 121 So. 3d at 1109 n.17. Rather than requiring a reduction of the judgment, we remand for entry of a judgment corresponding to the jury's award of damages but limiting UCFAA's liability for payment to $200,000 pursuant to section 768.28(5). See Pinellas Cnty. v. Bettis, 659 So. 2d 1365, 1368 (Fla. 2d DCA 1995). The Planchers must look to the Legislature to collect any amount awarded above the statutory cap. See § 768.28(5), Fla. Stat.

It is so ordered.

LABARGA, C.J., and PARIENTE, LEWIS, QUINCE, and CANADY, JJ., concur.
PERRY, J., recused.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION, AND IF FILED, DETERMINED.

Application for Review of the Decision of the District Court of Appeal - Direct Conflict of Decisions

Fifth District - Case No. 5D11-2710 & 5D11-4253

(Orange County)

Christopher Vincent Carlyle, Shannon McLin Carlyle, and David Alfred Monaco of The Carlyle Appellate Law Firm, The Villages, Florida; Stacy Delayne Blank and Patrick Michael Chidnese of Holland & Knight LLP, Tampa, Florida; and Charles Steven Yerrid of The Yerrid Law Firm, P.A., Tampa, Florida,

    for Petitioner

Matthew John Conigliaro of Carlton Fields Jorden Burt, P.A., Tampa, Florida; Wendy Frank Lumish of Carlton Fields Jorden Burt, P.A., Miami, Florida; and Peter D. Webster of Carlton Fields Jorden Burt, P.A., Tallahassee, Florida,

    for Respondent

Richard E. Mitchell of GrayRobinson, P.A., Orlando, Florida,

    for Amici Curiae The University of Central Florida Board of Trustees, The University of Florida Board of Trustees, and The Florida State University Board of Trustees, et. al.