PAUL G. BYRON, UNITED STATES DISTRICT JUDGE
Plaintiff Erin Joynt was awarded $2,000,000 in damages in a state law negligence action against Volusia County. Because Volusia County is a sovereign entity, and shielded by Florida's sovereign immunity caps, Plaintiff attempts to recover the excess damages awarded to her from Defendant Star Insurance Company under an excess liability policy issued to Volusia County. In the action before this Court, Plaintiff seeks a judicial declaration regarding the various rights and liabilities under the excess insurance policy.
Before the Court are the parties' cross Motions for Summary Judgment (Docs. 45, 46), and the parties' responses and replies thereto (Docs. 48, 49, 55). The parties agree this case involves a purely legal question of contract interpretation; thus, the entire dispute will be resolved on the parties' cross motions for summary judgment. (Doc. 56). Upon consideration and review of the record as cited by the parties in their respective briefs, the Court grants Defendant's Motion for Summary Judgment and denies Plaintiff's Motion for Summary Judgment.
I. BACKGROUND
A. Factual History
The accident that gave rise to this case occurred on July 31, 2011, when Plaintiff Erin Joynt ("Plaintiff") and her family were vacationing in Volusia County, Florida. (Doc. 45, ¶ 7). While sunbathing on the beach, Plaintiff was run over by a Volusia County employee in front of her husband and two young children. Plaintiff was severely injured by the accident.
On April 5, 2012, Plaintiff sued Volusia County for negligence in the Seventh Judicial Circuit in and for Volusia County. Following a four-day trial on causation and damages, the jury awarded Plaintiff $2,600,000 in damages. (Doc. 45, ¶ 12). This amount was reduced by the trial court following an appeal, and final judgment was entered for Plaintiff and against Volusia County for $2,000,000. (Doc. 1-1).
At the time of the accident, Volusia County was insured by Defendant Star Insurance Company ("Star") through a public entity liability policy (the "Policy"). (Doc. 51, ¶ 1; Doc. 1-7). The Policy provided that Star "will pay all sums an 'insured' legally must pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies, caused by an 'accident' and resulting from the ownership, maintenance or use of a covered 'auto'." (Doc. 1-7, p. 21). Under the Self-Insured Retention Endorsement, coverage applies "solely in excess of the Named Insured's self-insured retention" ("SIR"), which Volusia County must pay before coverage is triggered. (Id. at pp. 84-86). The SIR applies to "insured damages and insured allocated costs and expenses of investigation, *1235 defense, negotiation and settlement applicable to such insured damages." (Id. at pp. 84-85).
Volusia County, as a state entity, is protected by sovereign immunity. The Florida Legislature has waived its sovereign immunity for torts liability subject to Florida Statute § 768.28 (2011), which sets a cap on tort recovery for governmental entities at $100,000 per person and $200,000 per accident. Fla. Stat. § 768.28 (2011).[1]
Following the entry of final judgment in the underlying negligence action, Volusia County paid Plaintiff its sovereign immunity limits of $200,000. (Doc. 46, p. 4). Because of the caps set forth in § 768.28(5), Volusia County cannot be subjected to any further liability for the underlying accident. Plaintiff now seeks to recover her excess damages from Star under the Policy.
B. Procedural History
Plaintiff originally filed this declaratory judgment action in the Seventh Judicial Circuit in and for Volusia County, Florida. (Doc. 2). The Complaint named both Volusia County and Star as Defendants; however, Plaintiff entitled the lone count in her Complaint as "Claim for Declaratory Relief ... Against Star Insurance Company." (Doc. 2, p. 2). Plaintiff sought a judgment declaring the following:
(1) That the Policy of Insurance issued by Star [ ] provided coverage for the automobile negligence of Volusia County employee Thomas Moderie and that Volusia County and Thomas Moderie are "insureds" under the Policy;
(2) That the statutory language in Fla. Stat. § 768.28(5) grants sole authority to Volusia County to settle Erin Joynt's claim within the limits of the Star [ ] Policy and that Star [ ] cannot raise sovereign immunity as a defense to its duty to indemnify Volusia County for Erin Joynt's claim and the jury's mandate and consequential judgment;
(3) That the passage of a claim bill in excess of the sovereign immunity cap is NOT a condition precedent to Star['s] obligation to indemnify Volusia County up to the $5,000,000.00 limits of the Policy;
(4) That Star['s] coverage and indemnity obligations have been triggered by the verdict and judgment in this case;
(5) That Star['s] language prohibiting Volusia County from negotiating and/or settling Erin Joynt's claim is void as against public policy and in violation of Fla. Stat. § 768.28(5) ; and
(6) That Erin Joynt, as a beneficiary under the Policy, is entitled to attorney's fees and costs incurred in this action against Star [ ] and any other relief this Court deems just and proper.
(Doc. 2, pp. 9-10).
On May 27, 2016, Star removed the action to this Court under the Court's diversity jurisdiction. (Doc. 1). Star also filed a Motion to Determine Fraudulent Joinder, arguing that Volusia County was fraudulently joined in an attempt destroy diversity jurisdiction. (Doc. 4). Volusia County filed a Motion to Dismiss, arguing that Plaintiff cannot establish a live case or controversy between Plaintiff and the County and that the County should, therefore, *1236 be dismissed from the action. (Doc. 13). On June 22, 2016, Plaintiff moved to remand the case back to the Seventh Judicial Circuit for lack of diversity jurisdiction. (Doc. 14).
While those motions were still pending, Plaintiff filed a Motion to Stay the case, informing the Court that she was pursuing a claims bill from the Florida Legislature and that the passage of a claims bill would moot her action for declaratory relief. (Doc. 25). Because of the pending claims bill, the Court stayed the action until the adjournment of the 2017 legislative session. (Doc. 28).
Following the 2017 legislative session, the Court directed the parties to file a report on the status of the claims bill. (Doc. 30). On May 16, 2017, the parties informed the Court that the Senate Bill ("SB 30") passed its first committee, but that the House Bill ("HB 6543") failed in committee. (Doc. 31). In voting "no" for the claims bill, one Florida House Representative explained that he was waiting to hear the results of the declaratory judgment action pending before this Court:
I want to thank Plaintiff's counsel in this case for filing the dec action, because that is going to answer a question that we continue to keep wrestling with. And there's one thing that everybody at this table agrees with, bipartisan. This is the most bipartisan agreement that we have. The claims process in Florida is ridiculous and we need clarification or else this body needs to decide we're going to clarify it ourselves.
But right now we have a pending Federal dec action[.] [I]t's going to be resolved in about 6 months[.] [T]hat would help us answer that question. That dec action was filed for the purpose of determining whether or not they had to come here on a claims bill because they had an insurance policy that didn't require state involvement in the claims process.
So if that question is answered in the affirmative, that they (Plaintiffs) never had to come to this process, we will then have some guidance if we come back next session and say, 'We can now safely say that whenever there's an insurance policy out there-paid for by a municipality or county-that covers the sorts of things, you don't have to come to the claims bill process.' Yay for us. I mean, wouldn't that finality be great?
Normally I would take the position that-I agree with my esteemed colleague to the west of me Representative Grant-that, you know, let's keep this ball moving because it keeps everybody in a posture trying to resolve it, but we're only 6 months away from having a definitive answer and guidance for us in the future.
So, because of that sort of unique posture we find ourselves in, I'm going to vote no on the bill. I want to hear what the feds have say about it and then we can come back and try to fix this process in the future.
(Doc. 45, pp. 11-12). Because the Florida Legislature declined to pass a claims bill due to this pending action, the parties agreed that the stay should be lifted.
On May 23, 2018, the Court dismissed Volusia County from the action. The Court found the Complaint lacked a justiciable controversy between Plaintiff and Volusia County because Volusia County was undisputedly immune from further liability for the underlying accident. The Court also determined that it lacked the authority to decide whether Volusia County had the right to settle Plaintiff's claim, explaining that the Complaint alleged no present, ascertainable facts that demonstrated Volusia County had a bona fide need to enter a settlement agreement. (Doc. 22)
Because the question of whether Volusia County has the ability to enter into a settlement agreement is not properly before *1237 the Court, the remaining relief Plaintiff seeks can be summarized in one question: Is the passage of a claims bill a condition precedent to Star's obligation to pay Plaintiff's excess damages?
II. STANDARD OF REVIEW
A. Summary Judgment Standard
To prevail on a summary judgment motion, the movant must show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) ; see also Celotex Corp. v. Catrett , 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The Court must "view the evidence and all factual inferences therefrom in the light most favorable to the non-moving party, and resolve all reasonable doubts about the facts in favor of the non-movant." Davila v. Gladden , 777 F.3d 1198, 1203 (11th Cir. 2015) (quoting Carter v. City of Melbourne , 731 F.3d 1161, 1166 (11th Cir. 2013) (per curiam) ). "An issue of fact is 'material' if, under the applicable substantive law, it might affect the outcome of the case. An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." Harrison v. Culliver , 746 F.3d 1288, 1298 (11th Cir. 2014). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." Brooks v. Cty. Comm'n of Jefferson Cty. , 446 F.3d 1160, 1162 (11th Cir. 2006) (quoting Walker v. Darby , 911 F.2d 1573, 1577 (11th Cir. 1990) ).
In the context of cross-motions for summary judgment, the denial of one does not require the Court to grant another. Ernie Haire Ford, Inc. v. Universal Underwriters Ins. Co. , 541 F.Supp.2d 1295, 1297 (M.D. Fla. 2008). Finally, "[s]ummary judgment is appropriate in declaratory judgment actions seeking a declaration of coverage when the insurer's duty, if any, rests solely on the applicability of the insurance policy, the construction and effect of which is a matter of law." Id.
III. DISCUSSION
The parties do not dispute that the accident is covered by the Policy, and instead quarrel over when coverage is triggered. Plaintiff argues that "Star's obligation to pay the Final Judgment obtained by [Plaintiff] and assessed against Volusia County was triggered immediately following a lawful jury verdict, judgment, and subsequent payment by Volusia County of their self-insured retention obligations under the Policy." (Doc. 45, ¶ 3). Star, on the other hand, maintains that "there is nothing to cover and the [Policy] is not triggered" unless a claims bill is passed by the Florida Legislature authorizing the payment. (Doc. 46, p. 2).
According to Star, the Policy provides coverage only for those sums that Volusia County "legally must pay as damages." (Id. ). Because Volusia County is protected under Florida's sovereign immunity caps, Star contends that Volusia County is not "legally" obligated to pay any amount above the statutory caps absent a claims bill. Star argues that "[i]f Volusia County 'legally must pay' nothing above the $100,000 that has already been paid ... [, then] there is nothing to cover and the excess policy is not triggered." (Id. ).
Star's argument is based on the doctrine of sovereign immunity. Sovereign immunity is a fundamental principle of American jurisprudence, and provides that "a sovereign cannot be sued without its permission." Fla. Dep't of Health & Rehab. Servs. v. S.A.P , 835 So.2d 1091, 1094 (Fla. 2002).[2] "In Florida, sovereign immunity is *1238 the rule, rather than the exception ...." Pan-Am Tobacco Corp. v. Dep't of Corr. , 471 So.2d 4, 5 (Fla. 1984) (citing Art. X, § 13, Fla. Const.). Thus, absent a clear and unequivocal waiver of its sovereign immunity, the state and its counties[3] are immune from liability. Rabideau v. State , 409 So.2d 1045, 1046 (Fla. 1982) ("Any waiver of sovereign immunity must be clear and unequivocal.").
The Florida Legislature has authorized a limited waiver of state sovereign immunity in tort for personal injury, wrongful death, and loss or injury of property. Fla. Stat. § 768.28 (2011). Section 768.28 allows the state to be sued for torts "under circumstances in which the state or such agency or subdivision, if a private person, would be liable." § 768.28(1). Recovery, however, is capped at $100,000 per person or $200,000 per incident. § 768.28(5).
This does not mean that a tort victim with excessive damages is without redress. Indeed, the statute provides a mechanism for an injured party to collect an amount in excess of the statutory caps by allowing for any "portion of the judgment that exceeds these amounts [to] be reported to the legislature, but may be paid in part or in whole only by further act of the legislature." § 768.28(5). This mechanism for reporting judgments to the legislature is commonly referred to as a "claims bill."
The statute permits, but does not require, the state or its agencies or subdivisions to purchase insurance to cover damages incurred as a result of the limited waiver provided within the statute. Id. ("Notwithstanding the limited waiver of sovereign immunity provided herein, the state or an agency or subdivision thereof may agree, within the limits of insurance coverage provided, to settle a claim made or a judgment rendered against it ...."). But, importantly, the statute provides that "the state or agency or subdivision ... [will] not be deemed to have waived any defense or sovereign immunity ... as a result of obtaining insurance coverage for acts in excess of the $100,000 or $200,000 waiver." Id. This sentence unequivocally shows that the legislature did not intend for the purchase of liability insurance in excess of $200,000 to waive the state's sovereign immunity beyond the statutory caps. The statute only waives sovereign immunity up to $200,000. Any further waiver of sovereign immunity must be approved by the legislature through a claims bill-whether or not the state carries excess liability insurance.
This interpretation-that the purchase of excess liability insurance does not waive the state's sovereign immunity beyond the statutory caps-is supported by a recent case Florida Supreme Court decision. In Plancher v. University of Central Florida's Athletics Association, Inc. , 175 So.3d 724 (Fla. 2015), a jury found the University of Central Florida's Athletics Association ("UCFAA") liable for the death of a football player and awarded damages in the amount of $10 million. Id. at 725. On appeal, the Fifth District Court of Appeals reversed, finding that UCFAA was entitled to sovereign immunity. Id. In so holding, the Fifth District reduced the judgment to $200,000 in accordance with the *1239 caps provided in § 768.28(5) and explained that "[a]ny amount over the statutory cap must be sought by [the plaintiff] in a claim bill filed in the Florida Legislature." Id.
On final appeal, the Florida Supreme Court affirmed that UCFAA was entitled to sovereign immunity, yet quashed the Fifth District's decision to reduce the judgment to $200,000. Id. at 728. The court explained that sovereign immunity does not require the reduction of the judgment, but rather limited UCFAA's liability for payment to $200,000. Id. Even though the court allowed the $10 million judgment to stand, the court explained that the plaintiff still "must look to the Legislature to collect any amount awarded above the statutory cap." Id.
Although the court did not address when or how liability insurance could be used to pay for the judgment, in a footnote, the court rejected the plaintiff's argument that "even if UCFAA is entitled to limited sovereign immunity, UCFAA's liability insurance company is still responsible for the entire judgment amount." Id. at 728 n.4. Citing to Stuyvesant Insurance Co. v. Bournazian , 342 So.2d 471, 472 n.3 (Fla.1976), the court explained that insurance carriers cannot be responsible to pay amounts for which the insured would not have been liable. Id. Applying that reasoning to sovereign entities, the court indicated that insurers of the state and its subdivisions cannot be compelled to pay for damages the state itself cannot be compelled to pay. Id.
Applying that framework to the case at hand, Star cannot be compelled to pay for damages that Volusia County cannot be compelled to pay. Because Volusia County is immune from further liability, Star too cannot be liable for Plaintiff's damages without further action from the legislature.
Although the Court's holding here may, to some, seem to unfairly restrict the means of recovery for tort victims, it is important to note that prior to the enactment of § 768.25 there was no statutory right to recover for a county's negligence at all. As explained by the Florida Supreme Court:
In our view, section 768.28, rather than denying equal protection, has in fact brought fairness, equality, and consistency to an area of the law which for over one hundred years has been beset with contradiction, inconsistency, and confusion.... Clearly, the even-handed application of immunity under section 768.28 furthers equal protection of the law under our constitution rather than denies it.
Cauley v. City of Jacksonville , 403 So.2d 379, 385 (Fla. 1981).
Through the limited waiver provided by § 768.28, Plaintiff was able to recover $200,000 from Volusia County and may now seek to recover the remainder of her judgment through a claims bill from the legislature. Upon the passage of a claims bill, Star's obligation to indemnify Volusia County for the underlying accident will be triggered, and Star will thereupon be liable for the remainder of Plaintiff's judgment. It is the hope of this Court that the resolution of this declaratory judgment action will remove any remaining bars to that recovery.
IV. CONCLUSION
Therefore, it is ORDERED AND ADJUDGED as follows:
1. Plaintiff's Motion for Summary Judgment (Doc. 45) is DENIED .
2. Defendant Star Insurance Company's Motion for Summary Judgment (Doc. 46) is GRANTED .
3. The Clerk of Court is DIRECTED to enter judgment in favor of Defendant and thereafter close the file.
*1240 DONE AND ORDERED in Orlando, Florida, on June 1, 2018.

Since 2011, the Florida legislature has raised the caps to $200,000 per person and $300,000 per incident. § 768.28 (2018). The Court, however, applies "the statute in effect at the time an insurance contract is executed" when reviewing the terms of the contract. Hassen v. State Farm Mut. Auto. Ins. , 674 So.2d 106, 108 (Fla. 1996).

The doctrine of sovereign immunity is derived from the Eleventh Amendment, which divests courts of subject matter jurisdiction over cases brought against a state by citizens of another state. U.S. Const. Amend. XI. The United States Supreme Court has long construed the Eleventh Amendment's jurisdictional proscription to also bar lawsuits against a state by that state's own citizens. Seminole Tribe of Fla. v. Florida , 517 U.S. 44, 54, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996) ; Hans v. Louisiana , 134 U.S. 1, 10, 10 S.Ct. 504, 33 L.Ed. 842 (1890).

The Unites States Supreme Court has held that counties are subject to sovereign immunity when "acting as an arm of the State." N. Ins. Co. of N.Y. v. Chatham Cty. , 547 U.S. 189, 194, 126 S.Ct. 1689, 164 L.Ed.2d 367 (2006).