DISTRICT COURT OF APPEAL OF FLORIDA
SECOND DISTRICT

_____

CITY OF TAMPA,

Appellant,

v.

CHRISTOPHER FOOTTIT and CYNTHIA FOOTTIT,

Appellees.

No. 2D2024-0833

_____

October 16, 2024

Appeal pursuant to Fla. R. App. P. 9.130 from the Circuit Court for Hillsborough County; Melissa M. Polo, Judge.

Andrea Zelman, City Attorney, and Robert T. Mosakowski, Assistant City Attorney; and Natalia Silver, Senior Assistant City Attorney, Tampa (substituted as counsel of record), for Appellant.

Theodore E. Karatinos of Holliday Karatinos Law Firm, PLLC, Lutz, for Appellees.

LUCAS, Judge.

The City of Tampa appeals the circuit court's order denying its motion for summary judgment, a motion that asserted sovereign immunity against Christopher and Cynthia Foottit's negligence claims against the City for alleged damages they sustained as a result of a high-

speed police chase. We have jurisdiction, *see* Fla. R. App. P. 9.130(a)(3)(F)(iii), and affirm the circuit court's ruling in all respects.

It appears from the summary judgment evidence presented below that on the night of March 12, 2022, Officer Darrin Gibson of the Tampa Police Department (TPD) was on patrol when he received a dispatch alert of a stolen Nissan truck. According to Officer Gibson's deposition testimony, the report he received was a "signal 10," which indicated an automobile theft. When asked whether the dispatch call included any reference to a burglary, the officer admitted that neither the dispatch nor a contemporaneous BOLO referenced "burglary," as such, and that a separate signal, a "signal 21," was the dispatch normally used for suspected burglaries. Nevertheless, he stated that he understood this to indicate a "signal 21 suspect" of a "signal 10."

That night, while still on patrol, Officer Gibson noticed the truck identified in the dispatch driving by. He couldn't see the driver. The truck wasn't being driven erratically, nor did the driver violate any traffic ordinances.[1] Based on the signal 10 dispatch, but without contacting any other officers, Officer Gibson activated his cruiser's lights, at which time the truck sped off at a high rate of speed. Officer Gibson pursued the suspect.

The ensuing car chase lasted approximately fourteen minutes and went nineteen miles, going beyond the city limits of Tampa and out into unincorporated Hillsborough County. Officer Gibson confirmed that during the pursuit, he reached speeds between seventy-five and 105 miles per hour, that he ran through three or four red traffic signals, and that, due to mechanical issues, there were no backup officers to assist

---

[1] As it turned out, the driver of the truck was a juvenile.

2

him.  At one point, in order to radio in his speed, he had to drive with only one hand on the steering wheel.

Around eleven o'clock at night, the chase ended on a stretch of Turkey Creek Road, a dark, single-lane road bordered by a ditch. Somewhere near a gas station and Trapnell Road, the fleeing truck collided into the rear end of a Honda Civic being driven by Christopher Foottit.  Mr. Foottit testified in his deposition that the collision was "like being hit by a train."  As a result of the collision, the Foottits' car was totaled and one of the passengers, a family member, was killed.  The Foottits alleged they suffered serious, permanent injuries.

During the subsequent investigation of the accident, Officer Gibson's body camera recorded a conversation between some of the law enforcement officers on the scene:

> Officer Perez: That's why I don't like signal 10s because—you know what I mean?
>
> Officer Barry: That's why HCSO [Hillsborough County Sheriff's Office] doesn't pursue anything because of that.
>
> Unidentified Officer: We normally don't do anything.
>
> Officer Barry: I don't know why they—
>
> Officer Perez: I'm just saying you're picking property over life. I don't get that.
>
> Unidentified Officer: And then also—
>
> Officer Perez: And you're not only losing the property, you're gonna get it totaled.
>
> Officer Barry: Also, I mean you're getting the people that stole it, but at the same time, it's like, you know, why didn't they box that in?  We had enough cars.  I was right there and they're like we're going to flip the lights on.  I'm like, dude, just box it in.
>
> Officer Perez: Yeah.

Officer Berry: They were right by it and it was going normal speed.[2]

At the time of the collision, TPD's promulgated vehicle pursuit policy provided as follows:

[I]n instances where immediate apprehension cannot be affected with reasonable safety and the inherent risk to the public outweighs the necessity of apprehension, the pursuit will not be initiated or continued. . . .

1. Pursuits may be initiated when the officer reasonably believes that someone in the pursued vehicle has committed or attempted to commit:

a. Any forcible felony as defined in Florida Statute §776.08 to include any felony which involves the use or threat of physical force or violence against any individual.
b. Any burglary of a structure or conveyance whether or not the structure of conveyance is occupied at the time of the crime.

2. Prior to initiating a pursuit, or determining whether to continue a pursuit, factors to be considered include, but are not limited to:

a. Speed;
b. Road conditions;
c. Identity (known) and actions of suspect;
d. Weather;
e. Pedestrian volume;
e [sic]. Time of day or night;
f. Special circumstances. . . .

The nature of the specific crime, which justifies the pursuit, must be considered when weighing the need to immediately apprehend the suspect.

It does not appear that TPD's vehicle pursuit policy required an officer to contact his or her supervisor for authorization to initiate a

---

2 The Foottits maintain that the references to "boxing in" indicated there were other officers in the vicinity when Officer Gibson first spotted the Nissan truck and that had those officers been directed to do so, they could have boxed the truck in and prevented the driver from fleeing.

4

vehicle pursuit—and Officer Gibson confirmed he did not request authorization from his supervisor at the time, Lieutenant Guadion, to pursue the Nissan truck.[3] The Foottits submitted the affidavit of Robert R. Pusins, a police practices expert, who opined that Officer Gibson's actions "fell so far below an acceptable safe police practice for a vehicular pursuit as to be reckless," that his belief that the Nissan truck's driver had committed a forcible felony was not reasonable, that he violated TPD's vehicle pursuit policy, and that his "training on the city's pursuit policy was lacking."

The City filed a motion for summary judgment, arguing it had sovereign immunity against the Foottits' claims under section 768.28(9)(d), Florida Statutes (2022). In support of its motion, the City submitted only the affidavit of Officer Gibson and a copy of its vehicle pursuit policy. In a detailed order, the circuit court denied the City's motion, which the City now appeals.

We review a summary judgment order de novo. *Haskell v. PCP Grp.*, 386 So. 3d 644, 645 (Fla. 2d DCA 2024) (citing *Smith v. Frontier Commc'ns Int'l, Inc.*, 805 So. 2d 975, 977 (Fla. 2d DCA 2001)). As we explained in *Sarasota Tennis Club Holdings, LLC v. Country Club of Sarasota Homeowners Ass'n*, 378 So. 3d 1263, 1267 (Fla. 2d DCA 2024):

> "Under the new [2021 amendment] summary judgment standard, summary judgment is warranted 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.' " *Pio v. Simon Cap. GP*, 366 So. 3d 1200, 1203 (Fla. 2d DCA 2023) (quoting Fla. R. Civ. P. 1.510(a)). Under the federal (and now Florida) summary judgment standard, the moving party bears the initial burden of showing that there are no

---

[3] After this incident, TPD amended its vehicle pursuit policy. Lieutenant Guadion received a reprimand for failing to adequately supervise Officer Gibson's pursuit.

5

genuine issues of material fact that should be decided at trial. *See id.*

(Alteration in original.) When sovereign immunity turns on a legal issue, it is subject to de novo review. *Plancher v. UCF Athletics Ass'n*, 175 So. 3d 724, 725 n.3 (Fla. 2015). We turn, then, to the City's assertion of sovereign immunity in this case.

Sovereign immunity originated in our common law, *see Am. Home Assurance Co. v. Nat'l R.R. Passenger Corp.*, 908 So. 2d 459, 471 (Fla. 2005), section 2.01, Florida Statutes (2022), was memorialized in our state constitution, *see* art. X, § 13, Fla. Const., and has been partially waived by our state statutes, *see Cir. Ct. of the Twelfth Jud. Cir. v. Dep't of Nat. Res.,* 339 So. 2d 1113, 1114 (Fla. 1976). Section 768.28 of the Florida Statutes provides a limited waiver of sovereign immunity for tort claims against the state and its "agencies and subdivisions" (as defined in subsection (2))[4] when they are acting in their sovereign capacity. *See Sarasota Drs. Hosp., Inc. v. Sarasota County*, 49 Fla. L. Weekly D1595, D1597, D1600 (Fla. 2d DCA July 31, 2024); *Naso v. Hall*, 338 So. 3d 283, 286 (Fla. 4th DCA 2022). Pertinent here, as all parties to this appeal recognize, is section 768.28(9)(d), which provides:

> The employing agency of a law enforcement officer as defined in s. 943.10 is not liable for injury, death, or property damage effected or caused by a person fleeing from a law enforcement officer in a motor vehicle if:

---

[4] There is no dispute that the City of Tampa is an entity that can assert sovereign immunity on behalf of its police officers from the claims at issue here. Nor does there appear to be any argument that the high-speed pursuit created a zone of risk and constituted an operational function for which tort liability could, potentially, be imposed. The only question we address is whether the circuit court correctly interpreted the statutory waiver of sovereign immunity and properly denied summary judgment on the record before it.

6

1. The pursuit is conducted in a manner that does not involve conduct by the officer which is so reckless or wanting in care as to constitute disregard of human life, human rights, safety, or the property of another;

2. At the time the law enforcement officer initiates the pursuit, the officer reasonably believes that the person fleeing has committed a forcible felony as defined in s. 776.08; and

3. The pursuit is conducted by the officer pursuant to a written policy governing high-speed pursuit adopted by the employing agency. The policy must contain specific procedures concerning the proper method to initiate and terminate high-speed pursuit. The law enforcement officer must have received instructional training from the employing agency on the written policy governing high-speed pursuit.

We recently examined the statutory text in *City of New Port Richey v. Lamko*, 359 So. 3d 840 (Fla. 2d DCA 2023), where we observed, "Because the statute is written in the conjunctive, all three requirements must be met in order for the employing agency to assert sovereign immunity from liability." *Id.* at 844. Turning, then, to each of the three requirements, we readily agree with the circuit court that the City fell short of its burden for summary judgment.

According to the evidence presented by the Foottits, Officer Gibson engaged in a high-speed pursuit for nearly twenty miles without backup, at night, through multiple red traffic signals, onto a single-lane road, at speeds that exceeded a hundred miles an hour. At some point in the fourteen-minute-long chase he had only one hand on his vehicle's steering wheel. From the evidence presented, at no point either before or during the pursuit did he ever identify the driver of the stolen truck. And when the chase came to an end, the truck was being driven at such a high rate of speed that when it crashed into the Foottits' car, one of the passengers was killed and the car was totaled such that it looked like it had been "hit by a train." Although, as the City points out, section

7

768.28(9)(d)1 sets a high bar of recklessness to waive sovereign immunity for these kinds of cases, there is clearly a genuine issue of material fact in dispute such that a jury could conclude that Officer Gibson's actions initiating and pursuing this high-speed chase were "so reckless or wanting in care as to constitute disregard of human life, human rights, safety, or the property of another."

As to the second requirement under section 768.28(9)(d)2, the record demonstrates an equally apparent dispute concerning the reasonableness of Officer Gibson's claim that he thought a signal 10 dispatch call (which would have indicated stolen property) became, in effect, a signal 21 call (which would have indicated a burglary).[5] Again, the driver of the truck did not violate any traffic ordinances or drive erratically before Officer Gibson activated his vehicle's emergency lights and initiated the pursuit. The Foottits' expert witness, Mr. Pusins, testified that Officer Gibson's belief that a forcible felony had been committed, under these circumstances, was not reasonable; and, indeed, law enforcement officers at the scene of the investigation openly wondered why Officer Gibson engaged in this pursuit for a signal 10 call. Here, as well, the City failed to meet its summary judgment burden. *Cf. Carter v. Blue House Painting & Remodeling, LLC*, 367 So. 3d 618, 620 (Fla. 2d DCA 2023) ("Here, the record taken as a whole, and viewed in

---

[5] Burglary would constitute a forcible felony; simply stealing another's property, by itself, would not. *See* § 776.08, Fla. Stat. (2022) (" 'Forcible felony' means treason; murder; manslaughter; sexual battery; carjacking; home-invasion robbery; robbery; burglary; arson; kidnapping; aggravated assault; aggravated battery; aggravated stalking; aircraft piracy; unlawful throwing, placing, or discharging of a destructive device or bomb; and any other felony which involves the use or threat of physical force or violence against any individual.").

[appellant's] favor, could lead a rational trier of fact to find for [appellant].").

Finally, whether Officer Gibson's actions were in accordance with TPD's then-existing vehicle pursuit policy—which required consideration of, among other factors, speed, road conditions, the identity and actions of the suspect, the time of day or night, and any "special circumstances"—or were, as Mr. Pusins testified, in violation of that policy, was also a disputed issue of material fact. *Cf. Casey v. Mistral Condo. Ass'n*, 380 So. 3d 1278, 1286 (Fla. 1st DCA 2024) ("With their response to the Association's motion for summary judgment, the Caseys presented a reasonable interpretation of the [Declaration of Condominium] that, under Florida substantive law, created a genuine dispute as to a material fact.").

In sum, the record would not have supported summary judgment in favor of the City's sovereign immunity claim, and the circuit court was correct to deny the City's motion.

Affirmed.


SLEET, C.J., and KELLY, J., Concur.

_____

Opinion subject to revision prior to official publication.

9