# Supreme Court of Florida

_____

No. SC18-468
_____

**FLORIDA HIGHWAY PATROL, etc.,**
Petitioner,

vs.

**LASHONTA RENEA JACKSON, etc.,**
Respondent.

January 23, 2020

MUÑIZ, J.

This case is about the meaning of Florida Rule of Appellate Procedure

9.130(a)(3)(C)(xi), which governs the appealability of nonfinal orders denying

sovereign immunity.  The decision under review is *Florida Highway Patrol v.*

*Jackson*, 238 So. 3d 430 (Fla. 1st DCA 2018).  In that decision, the First District

Court of Appeal ruled upon the following question, which the court certified to be

of great public importance:

> DOES RULE 9.130[(A)(3)(C)(XI)] PERMIT AN APPEAL OF A
> NON-FINAL ORDER DENYING IMMUNITY IF THE RECORD
> SHOWS THAT THE DEFENDANT IS ENTITLED TO IMMUNITY
> AS A MATTER OF LAW BUT THE TRIAL COURT DID NOT
> EXPLICITLY PRECLUDE IT AS A DEFENSE?

*Id.* at 438.  We have jurisdiction, *see* art. V, § 3(b)(4), Fla. Const.  Our answer to the certified question is no.

We conclude that the disputed text of rule 9.130(a)(3)(C)(xi) has the same meaning that this Court has given to the identically worded text of a preexisting subdivision of rule 9.130.  We further conclude, however, that rule 9.130 in its current form insufficiently protects the interests underlying sovereign immunity.  Therefore, we also explain our decision to amend the rule 9.130 subdivisions addressing sovereign immunity and comparable government-related immunities from suit.

BACKGROUND

Article V, section 4(b)(1) of the Florida constitution gives district courts jurisdiction to review nonfinal orders "to the extent provided by rules adopted by" this Court.  To implement this provision, this Court has adopted Florida Rule of Appellate Procedure 9.130, which contains an exclusive list of the categories of nonfinal orders subject to appeal.  That list includes nonfinal orders involving four types of immunity: workers' compensation immunity; absolute or qualified immunity in a civil rights claim arising under federal law; immunity under section 768.28(9), Florida Statutes; and sovereign immunity.  Although rule 9.130 addresses each type of immunity in a separate subdivision, each subdivision uses identical jurisdictional language, allowing appeals of "nonfinal orders . . . that . . .

determine . . . that, as a matter of law, a party is not entitled to [immunity]." This case is about the meaning of that jurisdictional phrase.

The oldest of the rule 9.130 immunity subdivisions, the one that addresses workers' compensation immunity, has been in its current form since 1996. *See Amendments to Fla. Rules of Appellate Procedure*, 696 So. 2d 1103, 1127 (Fla. 1996). And in a trio of cases involving the workers' compensation immunity subdivision, this Court construed the jurisdictional language that is now at issue. *See Reeves v. Fleetwood Homes of Fla.*, 889 So. 2d 812 (Fla. 2004); *Fla. Dep't of Corr. v. Culver*, 716 So. 2d 768 (Fla. 1998); *Hastings v. Demming*, 694 So. 2d 718 (Fla. 1997).

The key holdings of those cases boil down to three related points. First, "[n]onfinal orders denying summary judgment on a claim of workers' compensation immunity are not appealable unless the trial court order specifically states that, as a matter of law, such a defense is not available to a party." *Hastings*, 694 So. 2d at 720; *see also Reeves*, 889 So. 2d at 821-22 ("reiterat[ing]" the "well-established rule" of *Hastings*). Second, a nonfinal order denying workers' compensation immunity is not subject to appeal if the trial court bases the denial on the existence of disputed facts. *See Hastings*, 694 So. 2d at 720. And third, to determine the appealability of a nonfinal order under the workers' compensation immunity subdivision, the district court is limited to a review of the order itself and

may not consider the underlying record. *See Culver*, 716 So. 2d at 768-69. For convenience, we will refer to these holdings collectively as "the *Hastings/Reeves* precedent."

As mentioned earlier, this Court has included in rule 9.130 additional subdivisions that address nonfinal orders denying three other types of immunity. *See In re Amendments to Fla. Rule of Appellate Procedure 9.130*, 151 So. 3d 1217, 1218 (Fla. 2014) (adding immunity under section 768.28(9) and sovereign immunity subdivisions); *Amendments to Fla. Rules of Appellate Procedure*, 696 So. 2d at 1127 (adding absolute or qualified immunity in a civil rights claim arising under federal law subdivision). Each time it added a new immunity-related subdivision, the Court used the same jurisdictional language as in the workers' compensation immunity subdivision. *See In re Amendments to Fla. Rule of Appellate Procedure 9.130*, 151 So. 3d at 1218; *Amendments to Fla. Rules of Appellate Procedure*, 696 So. 2d at 1127. The sovereign immunity subdivision, which the Court added to rule 9.130 in 2014, permits the interlocutory appeal of "nonfinal orders . . . that . . . determine . . . that, as a matter of law, a party is not entitled to sovereign immunity." Fla. R. App. P. 9.130(a)(3)(C)(xi).

This Court has taken up only one case involving the sovereign immunity subdivision: *Beach Community Bank v. City of Freeport*, 150 So. 3d 1111 (Fla. 2014), decided the same day the Court (in a separate opinion) added that

subdivision to rule 9.130. *See Amendments to Fla. Rules of Appellate Procedure*, 696 So. 2d at 1127. The Court had accepted jurisdiction in *Beach Community Bank* to address whether the First District could invoke its certiorari jurisdiction to review a trial court order denying a sovereign immunity-based motion to dismiss. Applying its then-recent decision in *Rodriguez v. Miami-Dade County*, 117 So. 3d 400 (Fla. 2013), the Court answered no to that question.

But the Court went on to hold that the trial court's order was appealable under the brand new sovereign immunity subdivision of rule 9.130. Without quoting the text of either that subdivision or the order under review, the Court stated that the new "amendment permits district courts to review nonfinal orders of decisions determining entitlement to sovereign immunity where the case involves a pure legal question." *Beach Community Bank*, 150 So. 3d at 1113. The Court ended its opinion by twice stating that the "amendment to rule 9.130 covers this exact scenario pertaining to a nonfinal order denying a sovereign immunity defense as a matter of law." *Id*. at 1114-15.

FACTS AND PROCEDURAL HISTORY

Against that backdrop, we turn briefly to the facts of this case. Vontavia Robinson tragically died in a predawn car accident on I-75. The accident occurred after smoke from a nearby brushfire caused visibility on the interstate suddenly to deteriorate. Several hours earlier, smoke from the same brushfire had caused two

other car crashes, leading the Florida Highway Patrol (FHP) to close the interstate for several hours. Mr. Robinson's deadly accident happened shortly after FHP had reopened the interstate.

Lashonta Renea Jackson, the personal representative of Mr. Robinson's estate, sued FHP. The complaint alleged that FHP's reopening and subsequent monitoring of the interstate were negligent operational decisions. After discovery, FHP moved for summary judgment, claiming both that it owed Mr. Robinson no special duty and that its challenged decisions were discretionary and therefore protected by sovereign immunity.

The trial court held a summary judgment hearing and later issued a brief order denying FHP's motion. The relevant portion of the order read: "Disputed issues of material fact exist, including, but not limited to, the extent and adequacy of DHSMV's continued monitoring of the roadway, that prevent the entry of Final Summary Judgment." The hearing transcript sheds no additional light on the trial court's reasoning.

FHP appealed the nonfinal order to the First District, relying on the sovereign immunity subdivision of rule 9.130 as the basis for the district court's jurisdiction. A panel of the First District voted unanimously to dismiss the appeal. In a thorough and thoughtful opinion, Judge Winokur concluded that the district court was "constrained to find that *Hastings* and *Reeves* preclude appellate

- 6 -

review." *Jackson*, 238 So. 3d at 436. He reasoned that, under those cases, "a defendant in Florida asserting that the trial court erroneously denied immunity may not appeal unless the order *explicitly* states that the defendant is not entitled to immunity." *Id*. at 435. This conclusion is consistent with decisions of the Third District Court of Appeal that have also carefully examined the issue. *See, e.g.*, *Citizens Property Ins. Corp. v. Calonge*, 246 So. 3d 447 (Fla. 3d DCA 2018); *Miami-Dade County v. Pozos*, 242 So. 3d 1152 (Fla. 3d DCA 2017).

Nonetheless, Judge Winokur observed that recent legal developments—including this Court's *Beach Community Bank* decision—suggested that the *Hastings/Reeves* precedents "unduly restrict interlocutory appellate review of orders denying immunity." *Jackson*, 238 So. 3d at 436-37. Judge Winokur also noted "the perceived conflict between *Beach Community Bank* and prior case law." *Id*. at 438. To address those issues, the panel certified the following as a question of great public importance:

> DOES RULE 9.130[(A)(3)(C)(XI)] PERMIT AN APPEAL OF A NON-FINAL ORDER DENYING IMMUNITY IF THE RECORD SHOWS THAT THE DEFENDANT IS ENTITLED TO IMMUNITY AS A MATTER OF LAW BUT THE TRIAL COURT DID NOT EXPLICITLY PRECLUDE IT AS A DEFENSE?

*Id.*

Our answer to the certified question is no.

- 7 -

ANALYSIS

The First District's interpretation of rule 9.130(a)(3)(C)(xi), the sovereign immunity subdivision, presents a question of law that we review de novo. And "[o]ur courts have long recognized that the rules of construction applicable to statutes also apply to the construction of rules." *Brown v. State*, 715 So. 2d 241, 243 (Fla. 1998).

The question that divides the parties here is whether the sovereign immunity subdivision requires an express statement, on the face of the order, that as a matter of law a party is not entitled to sovereign immunity. Jackson argues that it does. FHP argues that it does not. According to FHP, the sovereign immunity subdivision permits the district court to review the record to decide for itself whether material facts are genuinely in dispute and, if not, whether the trial court properly denied sovereign immunity.

As we explained earlier, this Court has definitively answered this same question in the context of interpreting the workers' compensation immunity subdivision. Under the *Hastings/Reeves* precedent, an order that "determines that, as a matter of law, a party is not entitled to workers' compensation immunity" is one that says so on its face. A reviewing court may not attribute a determination to the trial court's order based on the district court's own review of the underlying record.

Applying straightforward principles of statutory interpretation, we conclude that the meaning of the sovereign immunity subdivision's jurisdictional language is the same. The prior construction canon teaches that, "when judicial interpretations have settled the meaning of an existing statutory provision, repetition of the same language in a new statute indicates, as a general matter, the intent to incorporate its judicial interpretations as well." *Rowe v. N.H. Motor Transp. Ass'n*, 552 U.S. 364, 370 (2008) (quoting *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit*, 547 U.S. 71, 85 (2006)). This canon is closely related to the interpretive principle that legal terms can take on an expected, ordinary meaning among the experienced audience to which such terms are addressed. "[I]f a word is obviously transplanted from another legal source, whether the common law or other legislation, it brings the old soil with it." Felix Frankfurter, *Some Reflections on the Reading of Statutes*, 47 Colum. L. Rev. 527, 537 (1947); *see also Taggart v. Lorenzen*, 139 S. Ct. 1795, 1801 (2019) (describing and relying on this "longstanding interpretive principle").

A typical reader of our appellate rules would be entitled to expect that the jurisdictional language in the sovereign immunity subdivision bears the same meaning as the corresponding language in the workers' compensation immunity subdivision. The jurisdictional text in each subdivision is identical. The two subdivisions are component parts of a single rule of procedure. And, long before it

was included in the text of the sovereign immunity subdivision, the relevant language had been repeatedly, consistently, and authoritatively interpreted by this Court, our state's highest court. Here it is fair to say that the language at issue "acquired . . . a technical legal sense that should be given effect in the construction of later-enacted [rules]." Antonin Scalia & Bryan A. Garner, *Reading Law* 324 (2012).

FHP's arguments for a contrary interpretation of the sovereign immunity subdivision are unpersuasive. We will address each in turn, starting with the argument based on *Beach Community Bank*—the case that prompted the First District to pose the certified question and whose facts clearly inspired the wording of that question.

*Precedent.* FHP maintains that this Court held in *Beach Community Bank* that the appealability of a nonfinal order under the sovereign immunity subdivision does not depend on whether the order contains an express statement denying sovereign immunity as a matter of law. That is not a correct description of the holding in *Beach Community Bank*. It is true that the Court invoked the then newly adopted sovereign immunity subdivision to review the order at issue in the case. And it is also true that the underlying record in the case shows that the order did not include an express statement denying immunity as a matter of law. But the Court's opinion in *Beach Community Bank* is silent on the interpretive question

- 10 -

that has now been presented to the Court in this case.  The *Beach Community Bank* opinion does not quote (much less analyze) the text of the sovereign immunity subdivision; it does not quote or even paraphrase the text of the order under review; it does not mention the *Hastings/Reeves* precedent; and it says absolutely nothing about whether the sovereign immunity subdivision requires an express statement on the face of the nonfinal order that is being appealed.  "Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents."  *Webster v. Fall*, 266 U.S. 507, 511 (1925).

FHP makes a related argument that the *Hastings/Reeves* precedent is not controlling because workers' compensation immunity is different from sovereign immunity.  We need not address any differences in the two types of immunity, however, because that issue is immaterial to our task in this case.  Here we must decide what it means for an order to "determine that, as a matter of law," a party is not entitled to immunity.  The answer to that question—how to know what an order "determines"—does not turn on the type of immunity to which the order relates.  Material differences between sovereign and workers' compensation immunity might support adopting different rules for each.  But any such differences do not justify giving different meanings to the identical jurisdictional language that appears in the two subdivisions as written.

*Text*.  FHP next argues that the text of the sovereign immunity subdivision is unambiguous and that its plain meaning does not support an express statement requirement.  According to FHP, what matters for purposes of jurisdiction under the sovereign immunity subdivision is what an order functionally does, not what the order says.  We disagree that this functional assessment of an order is what the text unambiguously requires.  On the contrary, even if we were writing on a blank slate, we would conclude that the better reading of the subdivision's text favors the *Hastings/Reeves* precedent.  This is an instance where the literal and ordinary meanings of the text overlap.  The most natural and straightforward way to know what an order "determines" is to look at what the order says.

This case demonstrates in particularly stark terms the difficulty of accepting FHP's textual argument.  The trial court's order here stated that "disputed issues of material fact . . . prevent the entry of Final Summary Judgment."  FHP would have us read this order as one that "determines" that, *based on undisputed facts*, FHP was not entitled to sovereign immunity.  In other words, FHP asks us to conclude that the trial court's order here "determines" something directly contrary to what appears on the face of the order.  We believe that it is more reasonable to interpret the rule's text as focusing on the trial court's own understanding and articulation of its determination—not on how the would-be appellant chooses to characterize the trial court's decision.

- 12 -

Contextual indicators in rule 9.130 also cut against FHP's textual argument. The sovereign immunity subdivision conditions appealability on the trial court having denied sovereign immunity based on a particular determination: that, "as a matter of law," a party is not entitled to sovereign immunity. By contrast, a separate subdivision of rule 9.130 authorizes appeals of nonfinal orders that simply "deny" injunctions. *See* Fla. R. App. P. 9.130(a)(3)(B). This textual distinction supports looking for the trial court's determination on the face of the order. If the reason for the denial of sovereign immunity is controlling for purposes of jurisdiction—if a simple denial is not enough—then the appellate court should be able to identify that reason from the face of the order.

FHP's interpretation of the sovereign immunity subdivision is also inconsistent with the overall framework of rule 9.130. Interlocutory appeals of nonfinal orders are the exception, not the rule. They happen on an expedited briefing schedule. *See* Fla. R. App. P. 9.130(e) (allowing only fifteen days for filing initial brief). Rule 9.130(d) explicitly prohibits transmitting the record to the appellate court unless ordered. Given these provisions, we cannot interpret the sovereign immunity subdivision as conditioning the appellate court's jurisdiction on a review of the entire record in potentially every case. In fact, FHP's interpretation of the rule does not even separate the determination of jurisdiction from the underlying merits of whether the party is entitled to sovereign immunity

- 13 -

at all.  This conflation of the jurisdictional and merits inquiries is inconsistent with the text and structure of the sovereign immunity subdivision.

*Policy*.  Finally, FHP argues that its interpretation is most consistent with the sovereign immunity subdivision's purpose and with sound public policy. Specifically, FHP claims that interpreting the sovereign immunity subdivision the way we do diminishes the value of sovereign immunity, exalts form over substance, and leads to arbitrary and indefensible results.  We acknowledge that some of FHP's policy-based criticisms have merit.  And we agree with FHP's claims about the important societal interests underlying sovereign immunity. Every wrongly denied claim of sovereign immunity prolongs unnecessary litigation and siphons resources from the government entity's core mission.

We particularly agree with FHP that an erroneous denial of sovereign immunity causes injury that cannot be remedied on appeal.  In Florida, sovereign immunity is both an immunity from liability and an immunity from suit.  Some courts have read our opinion in *Dep't of Educ. v. Roe*, 679 So. 2d 756 (Fla. 1996), as holding that sovereign immunity is immunity only from liability.  *See, e.g.*, *Parker v. Am. Traffic Solutions, Inc.*, 835 F.3d 1363, 1368 (11th Cir. 2016).  But that is an overreading of *Roe*'s observation that "the benefit of immunity from liability, should the state ultimately prevail on the sovereign immunity issue, will not be lost simply because review must wait until after final judgment."  *Id*. at 759.

- 14 -

Nowhere in *Roe* did this Court explicitly characterize sovereign immunity as *only* an immunity from liability.

The correct understanding of sovereign immunity as including immunity from suit is set out in this Court's opinion in *Wallace v. Dean*, 3 So. 3d 1035 (Fla. 2009). There we "reaffirm[ed] that, in Florida, '[g]overnmental immunity derives entirely from the separation of powers.' " *Id*. at 1045 (quoting *Henderson v. Bowden*, 737 So. 2d 532, 538 (Fla. 1999)). We explained that the sovereign immunity inquiry consists of "whether the governmental entity remains sovereignly *immune from suit* notwithstanding the legislative waiver present in section 768.28, Florida Statutes." *Id*. at 1044 (emphasis added). We said that "sovereign immunity may shield the government from an action in its courts." *Id*. And we observed that "the *presence of sovereign immunity* does not render the State's actions nontortious (it simply means that the State has *not consented to suit* in its courts with regard to certain claims)." *Id*. at 1045. Sovereign immunity in Florida includes immunity from suit.

We also agree with FHP that, precisely because sovereign immunity includes immunity from suit, entitlement to sovereign immunity should be established as early in the litigation as possible. That is especially true in light of the separation of powers principles that animate the doctrine of sovereign immunity. Here we note that, in *Wallace v. Dean*, we explained the distinction in

- 15 -

governmental liability cases between "duty analysis" and the "later inquiry" whether the government remains sovereignly immune even where a legal duty has been established. *Id*. at 1044-45. Courts should not take our *Dean* analysis literally to mean that, when presented with a motion for summary judgment asserting entitlement to sovereign immunity, a court cannot address sovereign immunity if there are outstanding disputes about the existence of a duty of care. On the contrary, courts should determine entitlement to sovereign immunity as early as the record permits.[1]

Nonetheless, policy considerations and broad statements of purpose cannot trump the text of the rule. This case ultimately is not about the important ends furthered by the sovereign immunity subdivision; it is about the particular means that are embodied in the rule as written. *See, e.g.*, *Freeman v. Quicken Loans, Inc.*, 566 U.S. 624, 637 (2012) (statutes pursue their purposes by particular means). The remedy for the ills that FHP has identified is not to adopt a strained interpretation of the rule, but to change it.

AMENDMENTS TO RULE 9.130

The sovereign immunity subdivision in its current form insufficiently protects the public and governmental interests served by sovereign immunity.

___

1. To be clear, we do not require that the trial court conduct a pretrial evidentiary hearing (with or without a jury) to resolve factual disputes relevant to sovereign immunity.

- 16 -

Though the rule reflects an understandable concern for the limited resources of appellate courts, it leaves too great a risk that erroneous denials of sovereign immunity will go unreviewed until it is too late. In terms of form, the rule relies too heavily on the trial court's articulation of what it has decided. And in terms of substance, the rule is overly deferential to the trial court's decision whether any identified factual disputes are actually material to a party's entitlement to sovereign immunity. That is the difficult and broadly important question at the heart of many governmental liability cases, and it is one where an appellate court's comparative expertise is particularly great.

In a separate opinion that will be issued together with our decision in this case, *In re Amendments to Fla. Rule of Appellate Procedure 9.130*, No. SC19-1734 (Fla. Jan 23, 2020), we therefore amend rule 9.130 to expand the availability of appellate review of nonfinal orders denying sovereign immunity. We also make corresponding amendments to the rule 9.130 subdivisions governing immunity in civil rights claims arising under federal law and immunity under section 768.28(9), Florida Statutes. Those are immunities from suit that protect interests similar to the ones underlying sovereign immunity, and they too are under protected by the existing text of rule 9.130. *See Tucker v. Resha*, 648 So. 2d 1187, 1189 (Fla. 1994) ("[T]he qualified immunity of public officials involves '*immunity from suit* rather than a mere defense to liability.' ") (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526

- 17 -

(1985)); *Keck v. Eminisor*, 104 So. 3d 359, 366 (Fla. 2012) (recognizing that section 768.28(9)(a) protects against "even being named as a defendant").

CONCLUSION

Having answered no to the certified question, we approve the decision of the First District. Our decision is without prejudice to FHP to argue sovereign immunity to the trial court pursuant to this opinion and, if necessary, to seek interlocutory review under the new version of rule 9.130.

It is so ordered.

CANADY, C.J., and POLSTON, LABARGA, and LAWSON, JJ., concur.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION AND, IF FILED, DETERMINED.

Application for Review of the Decision of the District Court of Appeal – Direct Conflict of Decisions/Certified Great Public Importance

     First District - Case No. 1D16-3940

     (Alachua County)

Ashley Moody, Attorney General, Britt Thomas, Chief Assistant Attorney General, Amit Agarwal, Solicitor General, and Christopher J. Baum, Deputy Solicitor General, Tallahassee, Florida,

     for Petitioner

Jack J. Fine, Julie Aleve Fine, and Melissa S. Morris of Fine, Farkash & Parlapiano, P.A., Gainesville, Florida,

     for Respondent

Edward G. Guedes and Eric S. Kay of Weiss Serota Helfman Cole & Bierman, P.L., Coral Gables, Florida,

for Amici Curiae Florida League of Cities and City of Boca Raton

Frances Guasch De La Guardia of Holland & Knight, LLP, Miami, Florida; and Miriam Soler Ramos, City Attorney, Coral Gables, Florida,

for Amicus Curiae City of Coral Gables